William J. BENSON, Plaintiff and
Counter-Defendant,

v.

Robert H. ALLPHIN, Defendant and
Counter-Plaintiff.

William J. BENSON, Lorraine Benson,
Jerrald A. Benson and Mark E.
Benson, Plaintiffs,

v.

Robert H. ALLPHIN, Former Director of the Illinois Department of Revenue, Robert M. Whitler, Director of the Illinois Department of Revenue, Daniel J. Lenckos, Assistant Director of the Illinois Department of Revenue, George T. Rummel, Former Associate Director of the Illinois Department of Revenue, John Gallagher, Former Supervisor of Investigations Division for the Illinois Department of Revenue, Philip Mitchel, Manager of Investigation Division for the Illinois Department of Revenue, Robert Motta, Investigator and Property Officer for the Illinois Department of Revenue, George Diaz, Trooper for the Illinois State Police, William Troller, Investigator for the Department of Law Enforcement, and Unknown Defendants, acting as Agents, Subordinates and Employees of the aforementioned defendants, Defendants.

Nos. 77 C 3212, 77 C 3713.

United States District Court,
N. D. Illinois, E. D.

July 16, 1982.

Andrew B. Spiegel, Steven Ackerman, Chicago, Ill., for plaintiffs.

John E. Angle, Kirkland & Ellis, David L. Carden, Coffield, Ungaretti, Harris & Slavin, Samuel J. Betar, Paul J. Petit, Betar & Petit, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, William, Lorraine, Mark and Jerrald Benson brought this action under 42 U.S.C. § 1983 against defendants Robert Allphin, Robert Whitler, Daniel Lenckos, George Rummel, John Gallagher, Philip Mitchel, Michael Berry, Robert Motta, George Diaz, William Troller and various unknown others, all former officials or employees of the Illinois Department of Revenue. William Benson, a former Investigator for the Department of Revenue, alleges in Count I of his complaint in 77 C 3712 that following his discharge from employment with the Department, defendants conspired to harass him in retaliation for his exercise of First Amendment rights in connection with his disclosure of particular improprieties in the collection of cigarette taxes by Department of Revenue officials.

Lorraine, Mark and Jerrald Benson allege that they were also victimized by overt acts carried out by Diaz and Troller and various unknown defendants. Plaintiffs seek declaratory relief and $14,000,000 in punitive damages. William Benson alleges in Count II of his complaint in 77 C 3713 that he was fired from his position with the Department of Revenue without due process of law and in retaliation for his disclosures to other law enforcement agencies and the news media. Benson seeks declaratory relief, reinstatement, restitution and punitive damages in Count II.

Presently before the Court are defendants' motions to strike certain allegations contained in Count I and for summary judgment on the balance of Count I. Defendants have also moved for summary judgment on Count II of the complaint. For the reasons discussed below, defendants' motion to strike and their motion for summary judgment on Count II will be denied. Defendants' motion for summary judgment on Count I will be granted in part and denied in part.

I. Defendants' Motion to Strike Certain Allegations of Count I in 77 C 3713

Defendants first seek to strike plaintiffs' allegations that Allphin, Motta, Mitchel, Berry, Rummel, Gallagher, Diaz and Troller conspired to harass and punish William Benson for his disclosures concerning the Department of Revenue's alleged improprieties by falsely stigmatizing him publicly as a "confidential informant."[1] Defendants' motion is predicated on the general principle, established by the Supreme Court in *Paul v. Davis*, 424 U.S. 693, 708–710, 96 S.Ct. 1155, 1164–1165, 47

---

1. Defendants' alleged characterization of William Benson as a "confidential informant" is not so innocuous as to require us to strike this allegation as a matter of law. "Stigmatizing" charges cognizable under § 1983 are not limited to charges of illegality, dishonesty or immorality. It is sufficient simply that the charges alleged in the complaint call into question the plaintiff's "good name, reputation, honor, or integrity". *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980). Whether defendants' "confidential informant" charge falls within this category is a matter which can be resolved as a matter of law upon consideration of the specific circumstances under which the charge was delivered and the context of the statement containing the charge. Accordingly, the parties are directed to submit cross motions for partial summary judgment and supporting briefs setting forth those circumstances bearing on the stigmatizing character of defendants' alleged "confidential informant" charge. The motions with supporting briefs are due on or before July 30, 1982, and replies are due on or before August 9, 1982. For the purpose of considering the motion presently before us, we will assume that defendants' charge was stigmatizing.

L.Ed.2d 405 (1976), that defamation by a state official does not constitute an actionable claim under § 1983 unless it occurs in conjunction with the plaintiff's termination of employment. In the present case, defendants argue that the defamation could not have occurred in conjunction with the termination of William Benson's employment because the defamation occurred several months after the termination. Accordingly, defendants contend, these allegations must be stricken as insufficient to state a claim for relief under § 1983.

■ Defendants' argument is misconceived for several reasons. First, the Supreme Court's decision in *Paul v. Davis* does not, as defendants suggest, establish that defamation rises to the level of an actionable claim under § 1983 only when accompanied by a termination of plaintiff's employment.[2] Rather, *Paul* established that because individuals do not normally enjoy a constitutionally cognizable liberty or property interest in their good name or reputation, 424 U.S. at 712, 96 S.Ct. at 1165, defamation by a state official acting under color of law does not, standing alone, rise to the level of a constitutional deprivation for purposes of § 1983. The stigma resulting from official defamation must itself result in a further deprivation of a right otherwise protected by the Bill of Rights or state law. 424 U.S. at 710–712, 96 S.Ct. at 1164–1165. Accordingly, this Circuit and others have devised a "stigma-plus" standard against which to measure the sufficiency of a plaintiff's defamation claim under § 1983.

*Moore v. Otero*, 557 F.2d 435, 437 (5th Cir. 1977); *Sullivan v. Brown*, 544 F.2d 279, 283–84 (6th Cir. 1976); *Colaizzi v. Walker*, 542 F.2d 969, 973–74 (7th Cir. 1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir. 1976). The "plus" required under this standard typically includes, but is not limited to, the termination of plaintiff's employment.

■ In the present case, the "plus" associated with defendants' allegedly stigmatizing charge is the deprivation of William Benson's First Amendment right to disclose the improprieties of the Illinois Department of Revenue. The deprivation alleged in the complaint results from defendants' retaliation against William Benson for the exercise of his First Amendment rights in the past as well as the continuing threat of future retaliations for future disclosures. An official act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983, even if the act, when taken for a different reason, might otherwise have been proper. *Mount Healthy Board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977); *Buise v. Hudkins*, 584 F.2d 223, 229–30 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979).

## II. Defendants' Motion for Summary Judgment on Count I in 77 C 3713

■ Defendants seek summary judgment on those portions of Count I which

---

**2.** As evidenced by *Paul's* approving references to *Wisconsin v. Constantineau, supra*, the Supreme Court did not intend to restrict civil rights claims resulting from official defamation to cases involving the termination of plaintiff's employment. In *Constantineau*, the defamation resulted in the deprivation of plaintiff's right to purchase liquor in common with the rest of the community. 400 U.S. at 434–35, 91 S.Ct. at 508–09. *Constantineau* had nothing whatever to do with the termination of the plaintiff's employment.

Contrary to defendants' characterization, Judge Kirkland's prior opinion in this matter does not establish that a § 1983 defamation claim must always be accompanied by a termination of plaintiff's employment. The language to which defendants point in that opinion concerns the allegation in plaintiffs' prior complaint that Allphin called William Benson a "blackmailer" at a press conference in August, 1976. Insofar as this prior allegation purported to state a claim under § 1983 simply due to the stigmatization of plaintiff's "good name, honor, and professional reputation", Plaintiff's Complaint, ¶ 49, Judge Kirkland properly dismissed the claim. Judge Kirkland also concluded, however, that allegations concerning the harassment of William Benson as a result of his exercise of First Amendment rights *did* state a claim under § 1983. *Benson v. Walker*, 77 C 3713 (N.D.Ill. May 15, 1978). Thus, to the extent the defamatory remarks of state officials were part of that harassment, these remarks are actionable under § 1983.

allege that the conspiracy to harass plaintiffs was carried out, in part, by "unknown defendants" who committed various hostile acts against William, Jerrald, Mark and Lorraine Benson.[3] Although this case was filed five years ago and extensive discovery has taken place since that time, plaintiffs have failed to produce any evidence concerning either the identity of these unknown defendants or their connection to the named defendants.[4] While the non-moving party plaintiffs are entitled to all reasonable inferences in their favor on a motion for summary judgment, plaintiffs cannot create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial or what might be turned up by still further discovery. *Abiodun v. Martin Oil Service, Inc.,* 475 F.2d 142, 144 (7th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973); *Automotive Wholesalers of Illinois v. National Union Fire Insurance Company of Pittsburgh,* 501 F.Supp. 1205, 1211–12 (N.D.Ill.1980). *See generally* Fed.R.Civ.P. 56(e). Without any evidence connecting these overt acts to either the named defendants or to the conspiracy alleged in the complaint, the mere occurrence of hostile acts against the Bensons does not support the finding of a conspiracy involving the named defendants.[5] *Cf. Hickey v. New Castle County,* 428 F.Supp. 606, 611 (D.Del. 1977). Accordingly, the Court will grant summary judgment to the named defendants as to their liability under plaintiff's conspiracy allegations for acts perpetrated

---

**3.** In their brief in support of this motion, defendants assert that the motion for summary judgment is directed against the "balance" of Count I, not including the "confidential information" allegations discussed *supra.* This does not appear to be an accurate reflection of the remaining claims contained in Count I. In order to clarify what might otherwise appear to be a hopelessly confused record, the Court notes the following overt acts alleged as part of William Benson's conspiracy claim which have survived prior opinions in this case and are not challenged by defendants' motion for summary judgment:

(1) The First Amendment implications of defendants' "confidential informant" charges;

(2) The First Amendment implications of Allphin's charge that William Benson was a "blackmailer" (Although Judge Kirkland dismissed plaintiff's prior defamation claim arising from this charge, he did not preclude plaintiff from raising the charge in relation to William Benson's First Amendment claim);

(3) The First Amendment implications of Diaz and Troller's overt acts directed against William Benson directly (as opposed to those acts outwardly directed against William Benson's family).

(4) The First Amendment implications of Whitler and Lencko's purported decision to join and perpetrate the conspiracy against William Benson.

Judge Crowley's earlier opinion, reaffirmed by this Court, also found that the withdrawal of state support of William Benson's legal representation in various cases pending before Illinois state courts did not constitute an actionable claim under § 1983 because no defendant was in a position of authority to deprive William Benson of legal representation. This Court also noted that the claim was moot because the state has since provided William Benson with legal representation. Plaintiffs' effort to revive the withdrawal of legal representation as an overt act of the conspiracy does not cure the deficiency which resulted in Judge Crowley's dismissal. Accordingly, the defendants' purported withdrawal of legal representation did not survive Judge Crowley's decision and no longer constitutes an actionable overt act of the conspiracy.

**4.** Indeed, in the course of plaintiffs' depositions, they have admitted that they have no evidence to link the harassment of the unknown defendants to any of the named defendants. *See e.g.* Deposition of Lorraine Benson, May 18, 1981, pp. 20–21; Deposition of Mark Benson, May 18, 1981, pp. 51–61. Defendants argue that these admissions are somehow incomplete because the depositions were never completed and because their own attorney did not have the opportunity to question them. As a practical matter, however, no amount of future questioning of these plaintiffs could produce evidence which plaintiffs themselves admit does not exist. Further, if Jerrald Benson had actual evidence of such a link to the named defendants, it was his burden to come forward with that evidence on this motion.

**5.** Plaintiffs place great reliance on the possibility that proof of the overt acts might itself permit a jury to draw the inference that plaintiffs were victims of a conspiracy involving the named defendants. Although evidence of a series of overt acts is often relevant in proving the existence of an agreement among the actors, those same acts, without more, cannot also support the inference that a conspiracy existed among non-actors.

against the Bensons by unknown defendants.[6]

■ Defendants also seek summary judgment on those portions of Count I which allege that defendants Diaz and Troller conducted surveillance of the Bensons including, presumably, Jerrald, Mark and Lorraine Benson as well as William Benson; assaulted Mark and Lorraine Benson; drew a service revolver and used vile language against Mark Benson; and issued and prosecuted a traffic citation against Mark Benson in bad faith. Amended and Supplemental Complaint, ¶ 19, g, h, i, j, k, l, n, o, p. Defendants argue that Jerrald, Mark and Lorraine Benson, even if the victims of defendants' conspiracy to harass William Benson, lack standing to sue derivatively for the alleged deprivation of William Benson's First Amendment rights. Plaintiffs contend, on the other hand, that Diaz and Troller's conduct deprived Jerrald, Mark and Lorraine Benson of their own constitutional rights, independent of these rights allegedly deprived William Benson. Specifically, Jerrald, Mark and Lorraine Benson allege that defendants' conduct deprived them of the "right to be free in their persons, house, papers, and effects from unreasonable searches and seizures."[7] Amended and Supplemental Complaint, ¶ 20.

■ Plaintiffs' conclusory allegations concerning the nature of their personal deprivation are not sufficient to state a claim upon which relief can be granted under § 1983.[8] Jerrald, Mark and Lorraine Benson do not explain how their Fourth Amendment rights were threatened by defendants' conduct. Indeed, as described in the complaint, the overt acts taken by Diaz and Troller against these plaintiffs do not constitute either a search or a seizure. Moreover, much of the conduct alleged, although possibly tortious under state law, does not rise to the level of a constitutional deprivation actionable under § 1983 when considered independently of William Benson's First Amendment claim. *Cf. Sheffey v. Greer*, 391 F.Supp. 1044, 1046 (E.D.Ill. 1975). Finally, as defendants correctly point out, plaintiffs' complaint seeks relief only for the deprivation of William Benson's First Amendment rights, not the Fourth Amendment rights of Jerrald, Mark and Lorraine Benson. Accordingly, the Court will dismiss Jerrald, Mark and Lorraine's claims against the defendants.[9]

### III. Defendants' Motion for Summary Judgment on Count II in 77 C 3713

Count II of plaintiffs' complaint alleges that defendant Allphin discharged William Benson from employment with the Department of Revenue in retaliation for Benson's

---

6. Therefore, summary judgment will be granted as to the allegations contained in paragraph 19, a–f and q. Plaintiff's Amended and Supplemental Complaint. Should plaintiffs discover the identity of these unknown defendants in the future, they may be able to bring a tort action or a § 1983 action against those individuals at that time. Moreover, if plaintiff discovers a link between the unknown defendants and officials of the Department of Revenue, plaintiffs are not foreclosed under our ruling from bringing a § 1983 action against those officials on a theory other than conspiracy.

7. Jerrald, Mark and Lorraine Benson also allege that they have been deprived of the right to be free from unlawful conspiracies as the result of William Benson's exercise of First Amendment rights. Amended and Supplemental Complaint, ¶ 21. In addition to failing to allege a constitutional deprivation, this claim is clearly derivative to that advanced by William Benson. It is well established that a party cannot raise a claim under § 1983 based on the

alleged deprivation of another's constitutional rights. *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960). Accordingly, the Court will grant defendants' motion for summary judgment on these derivative claims.

8. Because neither party has submitted evidence outside of the pleadings on this particular issue and because the flaw in plaintiff's claim appears in the complaint itself, we will treat defendants' motion as a motion to dismiss.

9. The Court also notes, however, that the harassment of William Benson's family, as alleged, can be viewed as part of defendants' attempt to punish William Benson for his exercise of First Amendment rights. Inasmuch as such harassment was effectively directed against William Benson, these acts are not irrelevant to William Benson's conspiracy claim under the First Amendment.

disclosure of improprieties in the Department to representatives of the Hammond Times, the Chicago Tribune, the Illinois Department of Law Enforcement, the Illinois State Police and the Illinois Attorney General's Office. Benson alleges further that his discharge was in retaliation for his disclosure of certain improprieties involving Chicago police officers to representatives of the Chicago Police Department. Defendants have moved for summary judgment on this Count on the grounds that Benson has no evidence sufficient to support these allegations and that, in fact, Benson was terminated from employment because he attempted to extort a Department of Revenue job from Allphin. In support of this motion, defendants have submitted various affidavits asserting that Allphin, at the time he decided to terminate Benson, did not know of and thus could not have been motivated by Benson's disclosures to the press and various law enforcement officials. Defendants have also produced allegedly contemporaneous notes of Benson's attempts to extort a permanent position with the Department of Revenue.

The principle is well established that summary judgment is generally inappropriate in cases involving questions of motive or intent. *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 919 (7th Cir. 1974). Disposition by summary judgment is particularly inappropriate where, as here, the complaint involves delicate constitutional rights, complex fact situations, disputed testimony and questionable credibilities. *Porter v. Califano*, 592 F.2d 770, 778 (5th Cir. 1979). Because the motive behind Allphin's decision to terminate Benson is critical to resolution of this case, *Mount Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), and because the affidavits submitted by each side are directly contradictory on the extent of Benson's pre-discharge disclosures and Allphin's knowledge of those disclosures, the Court finds that there remain genuine issues of material fact which cannot be resolved properly on a motion for summary judgment.

Plaintiff has submitted competent evidence that challenges the authenticity and/or the credibility of the evidence offered by defendants to support their claim that Benson was discharged because he attempted to extort a job from Allphin. Plaintiff has also submitted competent evidence, the substance of which is contradicted by affidavits submitted by defendants, that he did in fact make disclosures of improprieties prior to his discharge to members of the news media and law enforcement officials. The representations in Allphin's affidavit that he did not know of these disclosures is not sufficient at this stage to remove all potential issues of fact regarding Allphin's motive, particularly in the possible absence of any credible alternative explanation for Benson's discharge. Benson is not required to win his case in defending against a motion for summary judgment; it is sufficient that he offer some competent evidence of a genuine issue of material fact. Having submitted such evidence in response to defendants' motion, plaintiff is entitled to the opportunity to prove his case.

## Conclusion

For the foregoing reasons, defendants' motions to strike certain allegations of Count I and for summary judgment on Count II are denied. Defendants' motion for summary judgment on Count I is granted as to the liability of the named defendants for acts perpetrated against the Bensons by unknown defendants. Defendants' motion for summary judgment on Count I is also granted as to the liability of the named defendants on those claims of plaintiffs other than William Benson identified in this opinion as derivative to the deprivation alleged by William Benson. The non-derivative claims of plaintiffs other than William Benson are dismissed. The balance of defendants' motion for summary judgment on Count I is denied. It is so ordered.