George RAKOVICH, Plaintiff,

v.

Gregory WADE and Darryl Drake, Defendants.

George RAKOVICH, Plaintiff,

v.

Chester KASS, Defendant.

Civ. A. Nos. 82–C–254, 83–C–528.

United States District Court,
E.D. Wisconsin.

March 4, 1985.

Michael O. Bohren, Milwaukee, Wis., for plaintiff.

Ronald L. Piette, G. George Lawrence, and Allan R. Strauss, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action under 42 U.S.C. § 1983 was tried to a jury, which awarded the plaintiff compensatory damages of $50,000 and punitive damages of $25,000 against defendant Wade, $25,000 against defendant Drake, and $40,000 against defendant Kass. Defendants have moved for a judgment *n.o.v.* or a new trial, and for an order striking the awards of compensatory and punitive damages. Rakovich has moved for an award of attorney fees, and for monetary sanctions against the defendants with respect to a discovery incident involving one Vincent Sheehan, and with respect to the purported harassment of a witness.

The motions will be denied, except for the motion for attorney's fees.

## I. FACTS

At trial, the jury found that the defendant police officers Drake and Wade retaliated against plaintiff for his exercise of First Amendment rights by investigating him, photographing him, recording his conversations and releasing a statement to the press that he would be criminally prosecuted, and that these actions were undertaken at the direction of the officers' superior, defendant Kass. The evidence at trial indicated that Rakovich had actively expressed his political opposition to the mayor of Greenfield and other local officials, that he opposed a commendation of a Greenfield police officer, one Mary Foley, made by the Greenfield Police Department in conjunction with a burglary at a local business enterprise called "Cars, Unlimited," and that he conducted a private investigation of the burglary to determine whether there was a basis for the commendation. Rakovich proved that the defendants photographed him, recorded his conversations, and requested that he be summoned before the Milwaukee County District Attorney to be charged with violations of the Wisconsin criminal code, even though they knew that there was no reasonable basis for the surveillance or the charges. He further proved that the defendants disclosed to the media that he was the subject of a criminal investigation and had been ordered to appear before the District Attorney. His theory of liability was that the defendants' acts were undertaken in retaliation for his political activity. The defendants sought to justify their investigation on the grounds that Rakovich was apparently harassing a state's witness, but the jury rejected this defense.

## II. DISCUSSION

In their motions for a new trial or a judgment *n.o.v.*, the defendants argue that damage to reputation alone does not support a claim under 42 U.S.C. § 1983. They base their argument on *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), which involved the distribution by local police officers of an allegedly defamatory leaflet. That case held that reputation alone, apart from some more tangible interest, does not implicate any liberty or property interests sufficient to invoke the procedural protections of the Due Process clause, and therefore mere defamation by a state official does not give rise to a cause of action under § 1983.

The argument misses the mark in this case. Rakovich sustained damages to his reputation as the result of defendants' acts undertaken in retaliation for his exercise of First Amendment rights, that is, his active political opposition to Greenfield public officials. Thus, the acts were undertaken to punish Rakovich for engaging in protected activity. Rakovich's theory of relief in this action is wholly consistent with other cases holding that acts undertaken by persons acting under color of state law in retaliation for political activity protected by the First Amendment may give rise to a claim under § 1983. *See e.g. Bart v. Telford,* 677 F.2d 622 (7th Cir.1982); *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). The fact that Rakovich's injury took the form of damage to his reputation does not shield the defendants from liability under § 1983. *See Benson v. Allphin,* 544 F.Supp. 464 (N.D.Ill. 1982). It is the implication of Rakovich's rights freely to associate with persons of his choosing and to express political dissent that gives rise to his right of action under § 1983. *Paul v. Davis* is thus distinct.

Defendants further argue that they are immune by virtue of a good faith qualified immunity defense. The jury was instructed on this point, and it disagreed. The evidence in this regard raised a question for the jury, and there was evidence to support their verdict. It will not be set aside on this ground.

Defendants also argue that they were performing a quasi-prosecutorial function after Assistant District Attorney Frank Crivello became involved, and are

therefore absolutely immune. They base this argument on the evidence that defendants Wade and Drake, the two police officers, met with Crivello during their investigation of Rakovich and that Crivello advised them with respect to the investigation and with respect to whether they could release information to the press. They rely on Crivello's testimony that they were acting as his agents.

The defense of absolute immunity is not applicable to these defendants. By their reasoning, any investigator who confers with a prosecuting official would suddenly be shielded from civil liability with respect to a pending investigation. Crivello's testimony is by no means conclusive of the issue of defendants' authority to act as they did. The verdict will not be set aside on this basis.

■ Defendants have moved that the award of compensatory damages be stricken, on the ground that the amount was intended to compensate Rakovich for the injury to his reputation and was therefore speculative. However, emotional harm and injury to reputation are compensable in actions under the Civil Rights Act of 1866. *See e.g., Seaton v. Sky Realty Co.*, 491 F.2d 634 (7th Cir.1974). Evidence of financial loss or medical evidence of mental impairment are not essential. Rakovich testified at some length that the incident caused him great humiliation and damaged his reputation. The jury, being instructed not to speculate, determined an amount that would fairly compensate him. The award of compensatory damages will not be stricken.

■ Defendants' motion to strike the punitive damages award will also be denied. Whether the defendants' acts were malicious, or in reckless or wanton disregard of Rakovich's rights, was a question for the jury, and the jury determined that an award of punitive damages was appropriate. There was sufficient evidence to raise a jury question in this respect, and sufficient evidence to support the award.

■ Defendants have also moved for a new trial on the grounds that the verdict was against the weight of the evidence. I disagree. There was evidence sufficient to show the defendants took action against Rakovich in vindictive retaliation for his political activity, that the defendants did not act in good faith, that their conduct was malicious or in reckless disregard of Rakovich's rights, and that Rakovich was injured thereby. The verdict is not against the weight of the evidence.

■ Defendants also have moved for a new trial on the grounds that the damage awards are excessive and that they were prejudiced by the Court's refusal to give their proffered absolute immunity instruction. The evidence was sufficient to support the compensatory and punitive damage awards, but insufficient to create any question that the defendants might have been absolutely immune.

■ The defendants also argue that they were unfairly prejudiced by the Court's comment, in the presence of the jury, that "you have a constitutional right in your good name." In the context of the entire proceeding, this remark did not prejudice the defendants. The jury was instructed at length on the plaintiff's burden of proof and the law applicable to his claims, but it was never instructed that a good reputation is a constitutional right. It was instructed that the rights to associate freely and to express dissent with respect to public officials' acts were constitutionally protected, and the jury determined that the defendants violated these rights. A new trial will not be ordered on this ground.

■ Defendants have moved for a new trial on the basis of their discovery that Nancy Allan, who is a reporter for the *Greenfield Observer* and was one of Rakovich's witnesses, gave materially false testimony. Apparently, the motion is made under Fed.R.Civ.P. 59. The Court did not receive this motion until October 30, 1984, but it was apparently omitted by oversight when defendants filed their other motions, and so the Court will consider it.

When a new trial is sought under Fed.R. Civ.P. 59 on the ground that a witness has committed perjury at trial on an issue central to the litigation, the court must inquire into the extent of the perjury to determine whether a new trial should be ordered. *Phillips v. Crown Central Petroleum Corp.*, 556 F.2d 702 (3d Cir.1977).

In this case, there was a dispute over the date on which Ms. Allan was told that Rakovich had been ordered to appear before the Milwaukee County District Attorney. This dispute is not a proper basis for ordering a new trial for two reasons. First, Ms. Allan has sworn that she disagrees with the defendants' recitation of what her testimony should have been, and that she stands by her trial testimony. She does not concede she has given false testimony. If defendants thought her testimony was false at the time she gave it, they should have tried to impeach her testimony at trial. Second, even if her testimony had been false, it was not crucial to the issues in dispute. It was scarcely material.

Rakovich has also moved the Court for an award of sanctions against defendant Kass and defense counsel for harassing and tampering with Nancy Allan. This motion is denied. Assuming that Ms. Allan was harassed and that Kass and the attorneys sought to coerce her to change her testimony after trial, that is a matter collateral to this lawsuit. If Ms. Allan thinks she was harassed, she can bring her own action.

Rakovich has renewed his motion for sanctions with respect to the discovery of Vincent Sheehan's testimony. This motion was raised before trial, but was denied without prejudice. Mr. Sheehan was an employee of Cars, Unlimited and was a state's witness in the matter of the burglary of that enterprise. It was Rakovich's questioning of Sheehan that gave rise to this suit, and thus Sheehan was a critical defense witness. During discovery, plaintiff's counsel sought to determine Sheehan's whereabouts, but defendants declined to divulge this information on Sheehan's request. However, the parties agreed that Sheehan would present himself for deposition on November 3, 1983 in Hartford, Connecticut. Accordingly, Rakovich's attorney traveled to Hartford, only to find ·upon arriving that Sheehan had a job commitment and would be unavailable. The defense attorneys, who were in Hartford on an unrelated matter, had sought to contact Sheehan at his residence but were told that he had gone "down the beach." It was impossible to determine his location. Rakovich's attorney returned to Milwaukee, and discovery of Sheehan's testimony did not occur until December 21, 1983. Rakovich seeks to recover the cost of his attorney's airplane ticket and a monetary penalty to punish defendants for their obstructionist tactics.

Neither defendants nor their attorneys had control over Sheehan's movements, and his failure to appear for the deposition in Hartford was apparently vexatious for all the attorneys in this case. The request for sanctions is denied, but the travel expense will be compensated, as discussed later.

Rakovich has moved for an award of attorney's fees pursuant to 42 U.S.C. § 1988. He has submitted affidavits itemizing the several expenses incurred by his attorney, Mr. Bohren, throughout the course of this litigation. He has also requested an upward adjustment of the hourly rate. The defendants oppose the motion, arguing that Rakovich did not prevail on all his claims, that the rates proposed are excessive, that certain items of expense are perfunctory, secretarial matters that should not be compensable at the attorney's hourly rate, and that a multiplier is inappropriate.

In the absence of special circumstances rendering an award of attorney's fees unjust, attorney's fees should be awarded to a prevailing civil rights plaintiff. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Precisely what is meant by a "prevailing" plaintiff in this context is disputed by the parties, however, because the defendants argue that expenses incurred in pursuing the claims against the

City of Greenfield, Francis Havey and Mary Foley are not compensable. They point to the facts that the claims against the City of Greenfield and Foley were ultimately not prosecuted and that Havey was dismissed at the close of Rakovich's case.

■ Prior to *Hensley,* the law in this circuit was that attorney's fees could only be awarded for preparation and presentation of claims upon which plaintiff actually prevailed. *Johnson v. Brelje,* 701 F.2d 1201, 1211 (7th Cir.1983). In *Hensley,* however, the Supreme Court held that a plaintiff could be considered "prevailing" if he succeeds on any significant issue in litigation that achieves some of the benefit he sought in bringing the suit. 103 S.Ct. at 1938–39. When a plaintiff succeeds on fewer than all the claims presented, the court must inquire 1) whether the claims that failed were unrelated to the successful claims, and 2) whether the plaintiff achieved a level of success that renders the hours reasonably expended a satisfactory basis for rendering a fee award. *Id.* at 1940–41.

The foregoing rules readily apply to cases in which a plaintiff asserts multiple claims against a single defendant, or where there are multiple defendants all of whom are ultimately held liable notwithstanding the dismissal of certain claims. However, where certain defendants are dismissed altogether, there is no finding that they violated plaintiff's rights and no basis for finding that plaintiff is a prevailing party with respect to them. It would be anamolous to hold that the defendants ultimately found liable are also liable for the expenses incurred in pursuing claims against other defendants who are ultimately dismissed altogether. In this case, the items of expense attributable to the claims against defendants Foley and Havey may not be readily separable from the items of expense attributable to the claims against the other individual defendants, and the claims against the City of Greenfield may not be separable at all. Nonetheless, the defendants cannot be held liable for the expenses incurred solely in the pursuit of the claims

against Foley and Havey. Therefore, counsel will be requested to resubmit his affidavit after excising to the fullest extent possible the items of expenditure attributable to defendants Foley, Havey and the City of Greenfield.

■ The request for an upward adjustment will be denied. Under *Blum v. Stenson,* ⸺ U.S. ⸺, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), an upward adjustment is permissible in certain cases, but there must be a persuasive showing that the representation was of an exceptionally high quality in view of the hourly rate charged, and that the success was "exceptional." *Blum v. Stenson* reflects the primary justification for a multiplier: that an attorney with exceptional expertise in an area of civil rights law will be able to prepare and try a case involving that area of law much quicker than an attorney of ordinary skill.

The present action was not extraordinary, for the purposes of analysis in conjunction with § 1988. The applicable legal principles were well-established. Moreover, while Mr. Bohren demonstrated a high degree of competence at trial, he has not established that he possesses such skill that an attorney of average competence would have required more time to prepare and try the case.

An aspect of the case that caused difficulty for Mr. Bohren was the discovery phase, because the record reflects that there were several motions to compel discovery brought by plaintiff. The expense incurred in that respect is compensable by application of the hourly rate. The Court has considered Mr. Bohren's other contentions and finds them insufficient to support application of a multiplier.

■ Defendants challenge Mr. Bohren's hourly rates as excessive. These rates are $75 to $125 per hour for out-of-court time and $125 to $150 per hour for jury trial time. Defendants state that these rates are unreasonably high. They do not suggest what a reasonable rate might be, nor do they state the rates at which their attorneys would have been compensated had

they prevailed here. Mr. Bohren's affidavit states conclusorily that his rates are fair and reasonable for similar work performed by similarly experienced attorneys in the Milwaukee metropolitan area.

The relevant geographic area is the metropolitan Milwaukee area, and in the Court's experience, rates for civil rights attorneys in this area range from $75 to $100 per hour. *See Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984). For the specific reason that the proffered rates exceed the upper ranges of the rates charged by similarly experienced attorneys in similar cases in this area, Mr. Bohren will be compensated at the rate of $80 per hour for out-of-court time and $100 per hour for court time.

■ Defendants also argue that some of the work itemized in Mr. Bohren's affidavit could have been performed by a legal secretary. They refer to instances where Mr. Bohren traveled to the court to file papers. Mr. Bohren's affidavit discloses that this occurred four times. That is not a substantial amount, but more importantly, it is common for attorneys in this district to file documents in person, even among large firms that employ messengers. Mr. Bohren's fee request will not be trimmed back in this respect.

■ Mr. Bohren has included in his itemization the amount of time wasted at the abortive deposition in Hartford, Connecticut. He has not stated the cost of the air fare. However, travel expenses are presumptively compensable under § 1988, and this includes out-of-pocket expenses reasonably incurred. Mr. Bohren has asked the Court for recovery of this amount in the context of his motion for sanctions. The amount is recoverable, but Mr. Bohren should first disclose the amount to the Court.

Finally, Mr. Bohren has estimated an additional ten hours to be devoted to additional post-trial motions. An estimate can now be replaced with a specific figure. Mr. Bohren should substitute this figure for his estimate.

In sum, Mr. Bohren is requested to resubmit his fee request with the items attributable to claims against defendants City of Greenfield, Havey and Foley excised. Mr. Bohren shall also disclose his out-of-pocket expenses for the Hartford trip and the amount of time spent on post-trial motions. He will then be compensated at the rates of $80 per hour for out-of-court time and $100 per hour of court time. No multiplier will be applied.

Rakovich also moves for dismissal of defendants Drake's and Wade's counterclaims. These counterclaims allege that Rakovich's action was frivolous and brought for the purpose of harassment. I find no basis for these counterclaims, and they are dismissed.

Rakovich's motions for leave to file an extended reply brief outside the fourteen day period are granted.

THEREFORE, IT IS ORDERED:

(1) that defendants' motions for a new trial or a judgment *n.o.v.* are denied;

(2) that defendants' motion to strike the damage awards is denied;

(3) that plaintiff's motion for sanctions with respect to the alleged harassment of Nancy Allan is denied;

(4) that plaintiff's motion for sanctions with respect to the deposition of Vincent Sheehan is denied;

(5) that plaintiff's motion for dismissal of defendants' counterclaims is granted;

(6) that plaintiff's motions for an extension of time to file a reply brief and for leave to file a brief in excess of the local page limit are granted;

(7) that plaintiff's motion for an award of attorney's fees is granted on the condition that within ten days of this order, the plaintiff's attorney shall submit a revised itemization of the expenses incurred in this case as set forth in the foregoing decision.