Joseph L. **BAILEY**, Plaintiff-Appellee,

v.

Kevin C. **ANDREWS**,
Defendant-Appellant.

No. 86–1410.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1986.

Decided Feb. 3, 1987.

Rehearing Denied March 19, 1987.

Jay T. Hirschauer, Hirschauer & O'Neill, Logansport, Ind., for defendant-appellant.

Roger William Bennett, Bennett Boehning Poynter & Clary, Lafayette, Ind., for plaintiff-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal of a judgment entered on a jury verdict awarding Plaintiff-Appellee Joseph L. Bailey $80,000 in Bailey's civil rights suit against Defendant-Appellant Kevin C. Andrews, a police officer employed by the Town of Fowler, Indiana. Andrews attacks the verdict on the grounds that Bailey was collaterally estopped from disputing that Andrews had probable cause to arrest Bailey, that Andrews was entitled to immunity from prosecution for his actions, and that the jury was not given sufficient evidence to find that Andrews violated Bailey's constitutional rights. Alternatively, Andrews argues that the jury's verdict on damages is excessive. We hold that the jury's decision on liability is valid and supported by the evidence, but we remand the case for a new trial on damages.[1]

## I. FACTUAL BACKGROUND

The suit arose out of a dispute between the parties regarding Bailey's dog. After a brief absence, Bailey returned home to find his dog missing. Bailey, searching for his dog, approached Andrews, who was parked in his police car in front of the Fowler Town Hall. Bailey asked Andrews whether the police had any knowledge of the dog's whereabouts. Andrews's noncommittal response failed to satisfy Bailey, who asked whether Andrews had shot his dog, saying that he wanted his "damn dog." Bailey's questions and comments apparently angered Andrews, who got out of his car to arrest Bailey. The plaintiff and the defendant scuffled in the street in front of the Fowler Town Hall until Andrews was able to handcuff Bailey. There was evidence that Andrews kicked Bailey during the scuffle. While Bailey was handcuffed, Andrews quickly searched Bailey's car. Andrews then took Bailey to the county police station. Bailey was not seriously injured and did not seek medical help; he did, however, suffer bruises and emotional distress.[2]

Bailey brought suit in district court against Andrews, police officer Dan Klapp, and the Town of Fowler[3] under 42 U.S.C. § 1983 (1982) alleging violations of his rights under the first, fourth, eighth, and fourteenth amendments to the United

---

1. Plaintiff-Appellee Bailey filed a motion in this court to strike a portion of Defendant-Appellant Andrews's Reply Brief and the whole of the Appendix thereto. Andrews's Reply Brief dealt in part with a contested jury instruction allowing the jury to assess compensatory damages based on the value of Bailey's constitutional rights, and the Appendix reproduced the Supreme Court's slip opinion in *Memphis Community School Dist. v. Stachura*, — U.S. —, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). The Court in *Stachura* considered the permissibility of a jury instruction that was almost identical to Jury Instruction 31A.

   We deny Bailey's motion to strike this portion of the Brief and Appendix. We note that Andrews objected to Jury Instruction 31A at the instruction conference, and because *Stachura* was not decided until June 25, 1986 (during the briefing period), Andrews did not have an opportunity to present his argument on the case until he submitted his Reply Brief.

2. The dog, an American Staffordshire terrier named Lucy, had apparently been hit by a car when one of Bailey's friends found her along a highway. By the time of the trial, however, she had been successfully bred twice and was in fine health.

3. At the close of plaintiffs case-in-chief, the district court granted a motion, not involved in this appeal, to dismiss the complaint against the latter two defendants.

States Constitution. After a jury trial, Bailey was awarded $80,000, including $25,000 in punitive damages against Andrews. The clerk entered a judgment on June 27, 1985. The judge then stated that he would give the defendant 18 days, rather than the 10 days allowed by the Federal Rules of Civil Procedure, in which to file motions for a directed verdict and a new trial. Andrews filed his motion for a new trial under Fed.R.Civ.P. 59(b) fifteen days later, on July 12, 1985, and the district court granted the motion conditionally on September 9, 1985, ordering a new trial unless Bailey accepted a remittitur to $17,000. Bailey rejected the remittitur, so on October 7, 1985, the court made the order for a new trial unconditional.

On October 17, 1985, Bailey petitioned this court for a writ of mandamus directing the district court to set aside the order for a new trial and to reinstate the final judgment. This court found that the district court exceeded its jurisdiction by granting a new trial on an untimely motion, and issued the writ on February 10, 1986, reinstating the jury verdict. *Bailey v. Sharp*, 782 F.2d 1366 (7th Cir.1986) (per curiam). On February 14, 1986, the district court, in compliance with the writ, entered judgment in favor of Bailey for $80,000. The judgment was entered for purposes of appeal only; this case is that appeal.

## II. LIABILITY

### A. Collateral Estoppel

Andrews raises several arguments attacking the jury's verdict for Bailey. First, Andrews argues that Bailey was collaterally estopped from disputing that Andrews had probable cause to arrest Bailey. In a preliminary probable cause hearing in Benton County Circuit Court on May 2, 1984, eleven days after Bailey's arrest, Judge Shipman found probable cause to proceed on a disorderly conduct charge. Andrews argues that this finding collaterally estops Bailey from claiming that his arrest was unlawful.

■ As we recognized in *Guenther v. Holmgreen*, 738 F.2d 879, 884 (7th Cir. 1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985), four requirements must be met before we will apply the collateral estoppel doctrine to a § 1983 claim. The issue must be the same as that involved in the prior judicial proceeding; the issue must actually have been litigated; the issue must have been resolved; and the issue's determination must have been necessary to the judgment in the prior proceeding. *Parklane Hosiery v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *Ray v. Indiana & Michigan Electric Co.*, 758 F.2d 1148, 1150 (7th Cir.1985).

As the Supreme Court noted in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), a federal court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Id.* at 96, 101 S.Ct. at 415. The Court has also indicated that federal courts should apply state collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state proceeding. *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982); *Guenther*, 738 F.2d at 884. The Indiana Supreme Court's description of collateral estoppel differs somewhat from the standard outlined above. The court has held that "[t]he application of the principle of collateral estoppel involves a two-step process: (1) determine what the first judgment decided; and (2) examine how that determination bears on the second case." *Webb v. State*, 453 N.E.2d 180, 183 (Ind.1983), *cert. denied*, 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767 (1984).

■ The state court judge decided that there was probable cause to proceed on a charge of disorderly conduct against Bailey. The probable cause determination was made at a criminal preliminary hearing designed to evaluate the sufficiency, but not the integrity, of the evidence against Bail-

ey. In *Whitley v. Seibel,* 676 F.2d 245 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982), we held that a defendant was not collaterally estopped from bringing a § 1983 action challenging the *integrity* of the evidence that was presented in a probable cause hearing. In *Whitley,* as in this case, the defendant "did not seek to relitigate the probable cause finding, but charged that the arresting officer's bad faith vitiated the finding." *Id.* at 249. Bailey sought to prove in his § 1983 trial that Andrews could not have reasonably believed that Bailey was committing disorderly conduct and that his arrest was therefore in bad faith. Because the issue that Bailey litigated in the district court was not the same as that litigated in his probable cause hearing, we find that the doctrine of collateral estoppel does not apply.

Additionally, we note that the probable cause hearing is an *ex parte* hearing at which the arresting officer is not required to appear. If the disorderly conduct charge had been prosecuted, Bailey would have had the opportunity to present evidence and cross-examine the state's witnesses. The charge was not prosecuted, however, so Bailey never had this opportunity. Although Bailey was present, he was not allowed to present any evidence, nor was he allowed to cross-examine the state's witnesses. We agree with the district court's ruling that "the lack of opportunity to cross-examine [is] of crucial importance in determining that Bailey did not have a full and fair opportunity to litigate the probable cause issue in this case. Accordingly, the court finds that plaintiff's constitutional claims relating thereto are not barred by collateral estoppel under *Guenther.*" Court's Memorandum and Order, March 28, 1985.

Because we find that the issues in the probable cause hearing and at the § 1983 trial were not the same, and that Bailey did not have a full and fair opportunity to litigate the issue of probable cause, we find it unnecessary to reach the other elements of federal collateral estoppel analysis.

### B. Immunity

Andrews also argues on appeal that he was entitled to either qualified or good faith immunity for his actions in arresting Bailey. The issue of immunity is one for the judge to decide. *Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985). The district court refused to grant Andrews immunity.

■ The Supreme Court described the standard for qualified or good faith immunity in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. For police officers specifically, the Court's standard is whether "officers of reasonable competence could disagree on [the] issue" of whether arrest was reasonable. *Malley v. Briggs,* — U.S. —, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986).

The Indiana disorderly conduct statute provides as follows:

A person who recklessly, knowingly, or intentionally:

> (1) engages in fighting or in tumultuous conduct;
>
> (2) makes unreasonable noise and continues to do so after being asked to stop;
>
> (3) disrupts a lawful assembly of persons; or
>
> (4) obstructs vehicular or pedestrian traffic; commits disorderly conduct, a Class B misdemeanor.

Ind.Code Ann. § 35–45–1–3 (West 1986). The basis for Andrews's arrest of Bailey was that Bailey was making unreasonable noise and that he continued to do so after being asked to stop. Witnesses testifying disagreed about whether Bailey was yelling. The plaintiff's witness, Gary Lueck, who was standing across the street, testified that Bailey "wasn't yelling, but he was talking loud." A defense witness, Michael

Probasko, testified that he could hear yelling from his home one-half block away from the scene. Bailey testified that he did yell, but only after some provocation from Andrews. Andrews testified that Bailey was "screaming at the top of his lungs." There is similar dispute about whether Andrews warned Bailey to be quiet. According to Andrews, he warned Bailey three times that he would have to quiet down or he would be arrested. Bailey testified that Andrews never told him to quiet down.

■ Because we must view the evidence in the light most favorable to plaintiff, the prevailing party, *Smith v. Rogers*, 290 F.2d 601, 602 (7th Cir.1961), we find that Andrews could not have reasonably believed that Bailey was committing disorderly conduct. Although Bailey admitted that he was yelling, his voice did not sound particularly loud to a witness across the street. Shouting or yelling that is not perceived as loud by a person standing across the street would not in these circumstances constitute unreasonable noise. And because the jury apparently believed Bailey when he said that Andrews did not warn him to stop making whatever noise he was in fact making, we must find that the statute's warning requirement was not fulfilled.

■ Appellant argues that Bailey's words, "I want my damn dog," and "did you shoot my dog?" are fighting words prohibited by the disorderly conduct statute. *Stults v. State*, 166 Ind.App. 461, 336 N.E.2d 669 (1975). Because we have found that Andrews did not warn Bailey to stop making noise, the character of Bailey's words is irrelevant. We note, however, that the word "damn" is not "inherently likely to provoke violent action." *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971). Neither is it legally obscene. *See Hess v. Indiana*, 414 U.S. 105, 107, 94 S.Ct. 326, 328, 38 L.Ed.2d 303 (1973); *Cohen*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Similarly, the question, "did you shoot my dog?" while probably annoying to Andrews, is not an inherently inflammatory question. *See Ca-*

*vazos v. State*, 455 N.E.2d 618 (Ind.App. 1983).

We therefore find, as did the district judge, that because Andrews could not have reasonably believed that Bailey was committing disorderly conduct, he was not entitled to immunity for his conduct in arresting Bailey.

## C. Sufficiency of Evidence

■ Andrews next argues that the jury did not have sufficient evidence to find that Andrews violated § 1983. To establish a violation under § 1983, a plaintiff must prove that (1) the defendant acted under color of state law (2) to deprive the plaintiff of rights, privileges, or immunities under the Constitution or laws of the United States. *Coleman v. Frantz*, 754 F.2d 719, 722 (7th Cir.1985); *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982). The first of these elements is not contested.

The Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled in part on different issue, Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), required federal courts to "consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir.1983); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1983). The Seventh Circuit has "recognized that *Parratt* is inapplicable where the plaintiff asserts a violation of substantive constitutional guarantees ... as distinguished from a violation of his procedural due process rights." *Guenther*, 738 F.2d at 882; *Wolf-Lillie*, 699 F.2d at 871–72. However, the Supreme Court has warned that "in any given § 1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim." *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986).

In this case, both parties fully litigated the constitutional issues. The jury found that Andrews had in fact violated Bailey's substantive constitutional rights, and awarded Bailey a total of $80,000 in damages. By awarding punitive damages, the jury implicitly found that Andrews had not acted negligently. A jury verdict cannot be lightly set aside so long as it has a reasonable basis on the record. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969); *Lenard v. Argento,* 699 F.2d 874, 882 (7th Cir.), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983).

Bailey argued in his complaint that Andrews's actions violated the following of Bailey's constitutional rights:

(1) his first amendment right to speak freely and petition an agent of the government for redress of grievances,

(2) his fourth amendment right to be free from unreasonable searches and seizures,

(3) his eighth amendment right to freedom from excessive force, and

(4) his fourteenth amendment due process rights.

■ The jury could have found that Andrews arrested Bailey because Bailey asked him "did you shoot my dog?" and said that he wanted his "damn dog." This question and this statement are neither fighting words nor obscenity. They are protected by the first amendment. Therefore, if Andrews arrested Bailey in response to Bailey's speech, the arrest would violate Bailey's first amendment right to speak freely and petition an agent of the government for redress of grievances. The jury could reasonably have found that this is what happened.

■ Similarly, the jury was presented with evidence that Andrews searched Bailey's car. This search was without a warrant. The Supreme Court has held that no amount of probable cause can justify a warrantless search absent consent, exigent circumstances, or some other exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The police may search a motor vehicle without a warrant because the mobility of a motor vehicle makes it impracticable for police to secure a warrant in many cases. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The officer must, however, have probable cause to believe that property associated with a crime or otherwise illegal will be found within the vehicle. *Id.; Almeida-Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 2537, 37 L.Ed.2d 596 (1973) ("Automobile or no automobile, there must be probable cause for the search."). The record is devoid of anything which would support a claim of probable cause to believe that Bailey was concealing anything illegal within his car. Andrews therefore was not justified in conducting a warrantless search of Bailey's car, and the jury could have reasonably so found. Moreover, if the jury found that Andrews did not have probable cause to arrest Bailey, it would also have had to find that any search incident to such arrest was invalid. *Recznik v. City of Lorain,* 393 U.S. 166, 89 S.Ct. 342, 21 L.Ed.2d 317 (1968). In either event, the jury had sufficient evidence, or rather sufficient lack of evidence to find that Andrews's warrantless search of Bailey's car was in violation of his fourth amendment right to be free from unreasonable searches.

■ An arrest without probable cause may violate a defendant's constitutional right to be free from unreasonable seizures. In *Guenther, supra,* the plaintiff alleged that his arrest was made in bad faith and without probable cause in violation of his fourth amendment guarantees. Although we held that Guenther, who, unlike Bailey, had a full and fair opportunity to litigate probable cause at his preliminary hearing, was collaterally estopped from relitigating the probable cause issue, we recognized that Guenther's allegations, if true, "might have [given rise to] a cognizable

§ 1983 cause of action for injuries suffered as a result of the illegal, unconstitutional arrest." *Guenther*, 738 F.2d at 883. *See Whitley v. Seibel*, 676 F.2d 245 (7th Cir.), *cert. denied*, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982).

■ The jury was instructed on the elements of Indiana's disorderly conduct statute, and also on the concept of probable cause. If the jury believed Bailey's testimony and that of witness Gary Lueck, it could reasonably have found that Andrews did not have probable cause to arrest Bailey under that statute. The jury also could have found that Andrews acted in bad faith in arresting Bailey. The jury thus could have found that Andrews's arrest of Bailey violated Bailey's fourth amendment right to be free from unreasonable seizures.

■ Bailey contends that Andrews's use of force in arresting him was excessive and violated his eighth and fourteenth amendment rights. We presume that Bailey considered excessive force to be a form of cruel and unusual punishment. Due process protects the rights of citizens who have not been convicted of crimes; the eighth amendment right to be free from cruel and unusual punishment is applicable only to sentenced criminals. *Hawkins v. Poole*, 779 F.2d 1267, 1269 n. 1 (7th Cir. 1985); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979). In making an arrest, an officer may use only the degree of force that is reasonable under the circumstances. However, an officer's conduct in making an arrest will not violate due process unless it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). This circuit has used a three-part test to determine whether an officer's conduct violates the fourteenth amendment. An officer's use of force is unconstitutional if it (1) causes severe injury, (2) is disproportionate to its necessity, and (3) is malicious rather than merely overzealous. *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986). The jury was presented with evidence that Andrews kicked Bailey, and wrestled with him in the road in front of Fowler's Town Hall. Although Andrews conceivably could have been wrestling with Bailey in order to handcuff him over his resistance, one can envision few reasons why a police officer would be justified in kicking a suspect. Bailey's physical injuries combined with the emotional distress he testified to could amount to compensable injury, especially where, as here, the officer's use of force was completely unjustified because the arrest itself was unjustified. The jury could have believed that Andrews's conduct, particularly his action in kicking Bailey, was inspired by malice. The jury could therefore have found that such conduct violated Bailey's right to due process under the fourteenth amendment.

We find that the jury was presented with sufficient evidence to find that Andrews violated Bailey's rights under the first, fourth, and fourteenth amendments to the Constitution.

## III. AMOUNT OF DAMAGES

Andrews argues that the jury's award of $80,000 in damages, including $25,000 punitive damages, is excessive. The role of a court reviewing a jury's decision on damages is limited. As this court stated recently,

> [t]rial judges may vacate a jury verdict for excessiveness only if it is "monstrously excessive" or if there is "no rational connection between the evidence on damages and the verdict," *Abernathy v. Superior Hardwoods, Inc.*, 704 F.2d 963, 971 (7th Cir.1983), and appellate review is governed by the extremely limited abuse of discretion standard.... Recently, this court added an additional element to the equation where the case under review is but one of a series of similar cases that establish a trend in damage awards: comparability. *Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir.1984) ...; *Phillips v. Hunter Trails Community Assoc.*, 685 F.2d 184, 190 (7th Cir.1982).

*Joan W. v. City of Chicago*, 771 F.2d 1020, 1023 (7th Cir.1985). If a court finds that a jury's award is excessive, it may sometimes order a remittitur. In other cases, remand for a new trial on damages is appropriate.

We have used the comparison element of the equation in two lines of cases: housing discrimination suits and suits arising from strip searches. The housing discrimination cases are comparable because the injury resulting from housing discrimination generally does not vary from case to case. We have been able to compare awards in several strip-search cases because those cases arose out of a single search policy. A brief review of these cases will illustrate the mechanics of comparability analysis.

### A. Housing Discrimination Cases

Last year, in a housing discrimination case arising under 42 U.S.C. § 1982, this court reviewed a jury award of $12,000 for such intangible injuries as humiliation and emotional distress. *Hamilton v. Svatik*, 779 F.2d 383 (7th Cir.1986). The court compared the award to awards in several district court cases in which each of the plaintiffs was awarded $10,000. The court held that although "[i]t is difficult to weigh the relative severity of such intangible injuries ... we cannot say the present case is so different from the cases cited that a reduction of compensatory damages would be required." *Id.* at 389.

*Phillips, supra,* also was a housing discrimination case. In *Phillips*, this court compared a $25,000 damage award to awards in other housing discrimination cases. After finding that the range in recent cases (before *Hamilton*) had run from $500 to $5,000, the court found that the jury's award of $25,000 was excessive, and reduced it to $10,000.

### B. Strip-Search Cases

The *Joan W.* and *Levka* cases, *supra,* both dealt with strip searches conducted by Chicago police pursuant to City of Chicago policy. At the time *Joan W.* was decided, at least ten suits had been tried before juries in the Northern District of Illinois.

Damage awards ranged from a low of $3,300 to a high of $60,000. The jury's award of $112,000 to Joan was clearly disproportionate to the earlier awards. We went on to examine the factual circumstances of each of the cases and found that some of the searches were more aggravated than the search to which Joan had been subjected. In contrast to the searches imposed on other plaintiffs, Joan's search did not involve any touching and was not conducted within the view of male officers. The plaintiff also did not claim or prove that she had suffered emotional distress or trauma more severe than that claimed by other plaintiffs. For example, Joan did not seek psychiatric or psychological assistance. She showed little evidence of diminished social contacts, and the experience appeared to have had no ill effects on her job performance. Based on this comparison, we believed that the damage award was excessive to the extent it exceeded $75,000. This court remanded the case to the district court to hold a new trial unless plaintiff agreed to a remittitur reducing the award to $75,000.

### C. Cases Involving Injury Caused by Police

Cases in which an individual is injured by police are difficult to compare because although the cases share a common class of defendants, the claims and damages tend to be very fact-specific. It is useful to examine a few of these cases, however, to gain some perspective on the varying amounts that courts and juries have awarded to plaintiffs.

In *Bohannon v. Pegelow*, 652 F.2d 729 (7th Cir.1981), the plaintiff was arrested and falsely charged with pandering. The charges were eventually dismissed, and the plaintiff sued claiming that he was arrested without probable cause and in violation of his civil rights. The jury awarded the plaintiff $10,000 compensatory and $15,000 punitive damages. On appeal, this court held that the damages were not excessive in light of the facts that plaintiff had spent sixteen

hours in jail, and had spent months thereafter contesting the false charge. Plaintiff also suffered embarrassment from the stigma of the charge. We upheld the jury's award of $25,000 in damages.

Plaintiffs' awards have not always been upheld on appeal, however. In *Taliferro v. Augle*, 757 F.2d 157 (7th Cir.1985), we reduced a $72,000 award to $50,000. The problem was lack of proof. The plaintiff claimed that he was arrested for no reason at all, and that police had caused him "serious injuries that included destroying his dental plate and knocking out many of his real teeth." *Id.* at 159. At the close of testimony, plaintiff had asked for $25,000 for physical injury, $100,000 for emotional distress, and $50,000 for lost property (a manuscript). There was no evidence of lost earnings. The court noted that

> [t]he only effort at proof here, besides the proof of $35 in out-of-pocket medical expenses, was Taliferro's testimony that he was distraught and humiliated by his mistreatment at the hands of the police, as well as suffering physical pain.... $47,000 is not a reasonable estimate of such an intangible loss when no effort at all is made to estimate an objective basis for quantifying the loss. We consider $25,000 the highest compensatory damages that can be justified on this record....

*Id.* at 162. The court did not disturb the jury's award of $25,000 in punitive damages to be split between the two police officer defendants. "Police brutality is an exceedingly serious matter and $12,500 is not excessive punishment of a policeman who commits it." *Id.*

In *Rakovich v. Wade,* a case from the Eastern District of Wisconsin, the jury awarded the plaintiff $50,000 compensatory and $90,000 punitive damages from several defendants. 602 F.Supp. 1444 (E.D.Wis. 1985). Plaintiff had sued two police officers and their superior for actions they took against plaintiff in retaliation for plaintiff's active opposition to local officials in Greenfield, Wisconsin. The plaintiff proved that the defendants photographed him, recorded his conversations, and required that the plaintiff be summoned before the Milwaukee County District Attorney and charged with violating the criminal code although they knew that there was no basis for the charges. The defendants disclosed to the media that plaintiff was the subject of criminal investigation and had been ordered to appear before the D.A., thus damaging plaintiff's reputation. The defendants moved to strike the compensatory damages award on the ground that it was speculative. The court denied the motion, noting that "emotional harm and injury to reputation are compensable in actions under the Civil Rights Act of 1866.... Evidence of financial loss or medical evidence of mental impairment are not essential." 602 F.Supp. at 1448. Because the plaintiff testified at trial to the humiliation and damage to his reputation that he had suffered, the court found that the jury had had an adequate basis on which to determine a fair award.

In another district court case, *Spears v. Conlisk,* 440 F.Supp. 490 (N.D.Ill.1977), a plaintiff sued a police officer for unlawful arrest and for shooting the plaintiff. The court awarded the plaintiff $100,000 from the defendant who actually shot plaintiff, and $100,000 jointly and severally from the other defendant police officers who worked together to cover up the incident. The court found that the award was justified because the plaintiff endured pain from his injury for almost a year, he was incarcerated for more than eight months awaiting trial on false charges because he was unable to post bond, and the plaintiff lost his job as a result of this confinement.

█ These cases, admittedly, are difficult to compare. We believe, however, that the case at bar is most closely analogous to the *Taliferro* case, particularly in regard to Bailey's lack of proof of injury. Bailey testified that a pair of his boots, worth approximately $75, were scratched in the scuffle, and that his pants, worth about $20, were torn. Bailey said that his glasses, worth $70, were flattened in the road, but that he had taken them apart and

straightened them, and is still wearing the same pair of glasses. Bailey suffered no other economic loss as a result of his arrest. He lost no time at work, other than to attend hearings and depositions, nor did he incur any bills for treatment of his physical or emotional injuries. Bailey attempted to prove his physical injuries through testimony that he was bruised on his hip and back for about two weeks, and that his scratches lingered for three weeks. He attempted to prove emotional injuries with testimony that he seldom shops in Fowler and rarely stops there for coffee on his way to work, that he dwelt in conversation on his embarrassment for six weeks, that he left town for a while, and that he has had some difficulty sleeping. As in *Taliferro*, we find that $55,000 "is not a reasonable estimate of such an intangible loss when no effort at all is made to estimate an objective basis for quantifying the loss." *Taliferro*, 757 F.2d at 162.

█ In addition to challenging the jury's award as being excessive, Andrews challenged the components of the damages award. In his Reply Brief, Andrews challenged Jury Instruction 31A[4] as giving the jury an improper measure by which to assess Bailey's damages. Andrews supported this challenge with the Supreme Court's opinion in *Memphis Community School District v. Stachura*, — U.S. —, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). Although Andrews objected to Jury Instruction 31A at the instruction conference, he did not renew this objection in his initial brief to this court. As we pointed out in note 1, *supra*, *Stachura* was not decided until June 25, 1986, and Andrews thus did not have an opportunity to present his ar-

gument on the case until he submitted his Reply Brief.

There is some doubt as to whether Andrews's counsel adequately stated the grounds of his objection to the jury instruction under Federal Rule of Civil Procedure 51; nonetheless we are bound by the Supreme Court's decision in *Stachura* that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [§ 1983] cases." *Id.* at 2545. The district court's Instruction 31A, allowing the jury to consider the inherent value of Bailey's constitutional rights, thus gave the jury an impermissible measure by which to assess damages.

Judge Sharp, ruling on Andrews's motion for a judgment notwithstanding the verdict or a new trial, ordered a new trial unless Bailey accepted a remittitur reducing the jury's award of compensatory damages from $55,000 to $15,000 and reducing the punitive damages award from $25,000 to $2,000. Although that order was ultimately set aside because it was entered on an untimely motion, we agree with Judge Sharp that the damages awarded in this case were excessive under any standard. Rather than order a remittitur, however, we find that we must remand the case for a new trial on damages. As in *Stachura*, the jury verdict specified an amount ($25,000) for punitive damages, but it did not separate out the elements of the compensatory damages award. Therefore, we are unable to determine what portion of the award was based on the improper jury instruction and intended to "compensate" Bailey for the inherent "value" of his constitutional rights. The Supreme Court in

---

**4.** Jury Instruction 31A reads as follows:

If you find that the Plaintiff has been deprived of a constitutional right, or several constitutional rights, you may award him damages to compensate him for the deprivation.

Damages of this type of injury are more difficult to measure than damages for physical injury or injury to one's property. There are no medical bills or other expenses by which you can judge how much compensation is appropriate. The value of such rights, while difficult to assess, must be considered great.

The precise value you place upon any and each constitutional right which you find was denied to Plaitniff [sic] is within your discretion. You may wish to consider the importance of the right or rights in our system of government, the role which this right or these rights have played in the history of our republic, the significance which this particular issue had for the Plaintiff, and the significance of the right in the context of the activities which Plaintiff was engaged in at the time of the violation of the rights.

*Stachura* found that "[w]hen damages instructions are faulty and the verdict does not reveal the means by which the jury calculated damages, '[the] error in the charge is difficult, if not impossible, to correct without retrial, in light of the jury's general verdict.'" 106 S.Ct. at 2546 (quoting *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 256 n. 12, 101 S.Ct. 2748, 2754 n. 12, 69 L.Ed.2d 616 (1981)). We believe a remittitur in some amount would be clearly compelled, but because we have an inadequate basis to determine an appropriate amount we must leave that to the jury. The circumstances, a citizen being unjustifiably knocked down and kicked on a city street by a policeman, and the resulting injury, were sufficient, as determined by the jury, to establish liability, but the circumstances and the injury are not sufficient to sustain the jury's excessive damage award.

The judgment on liability is affirmed, but we remand the case for a new trial on damages. Circuit Rule 18 will not apply.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.