United States Court of Appeals,

Fifth Circuit.

No. 93-1598.

Michael WELLS, Plaintiff-Appellee,

v.

Sergeant Donald BONNER, et al., Defendants,

Sergeant Donald Bonner and Officer Kevin L. Harris, Defendants-Appellants.

Feb. 17, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This interlocutory appeal presents the question of whether the defendant police officers are entitled to qualified immunity in this 42 U.S.C. § 1983 action alleging false arrest, excessive force and malicious prosecution, all stemming from the officers' arrest of the plaintiff outside a nightclub for disorderly conduct and resisting a search. The district court denied the defendant officers' claim for qualified immunity because of disputes of material fact. The officers filed this interlocutory appeal. We rule in the officers' favor and reverse the denial of immunity. Based on the intervening Supreme Court case of *Heck v. Humphrey,* --- U.S. ----, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), we hold that as a matter of law the plaintiff, Michael Wells, has failed to state a cognizable claim for false arrest and malicious prosecution against the defendant officers because Wells's conviction for resisting a search constitutes a final judgment on the matter, which bars this civil suit. With respect to his excessive force claim, we hold that the plaintiff has failed to show that the officers violated his clearly established constitutional rights because he suffered no significant injury as required under the law at the time of his arrest. *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc).

I

A

The following picture emerges from the confusing record and the contentious oral argument.

In the early morning hours of May 27, 1990, the defendants, Dallas policemen Sergeant Donald Bonner and Officer Kevin Harris, were working during their off-hours in their official police uniforms as security guards for a nightclub. The nightclub owners had instructed Bonner and Harris to guard against automobile theft and to keep clear the sidewalk entrance to the establishment, except for patrons who were waiting for valet parking service. At approximately 2:30 a.m., the plaintiff, Michael Wells, who admits that he had been drinking and taking prescription drugs, exited the nightclub and stood on the sidewalk in front of the entrance to the club. From this point forward, the events leading to Wells's arrest are in dispute.

B

Wells contends that he was waiting for valet service when the defendant, Officer Harris, approached him and directed him, without explanation, to move across the street. Wells questioned the necessity of the move and told Officer Harris that he was waiting for valet service. Wells says that the officer requested him to move and that he refused to move for a period of four to five minutes while awaiting his vehicle. His car arrived in the meantime. He then approached Harris to get his name from his badge. While he was walking back to the car he told Harris that he planned to file a complaint against him. At this point, Harris approached him, placed a hand on him, which caused Wells to either turn or jerk back, whereupon the officer grabbed him in a choke hold and threw him to the ground.

Wells contends that it was at this point that he was arrested. Sergeant Bonner came to Officer Harris's aid, and the policemen escorted Wells to their patrol car. While he was being searched, Wells again threatened to file a complaint against the officers. He then was slammed against the patrol car, his arms were brought behind him, and he was handcuffed. The twisting of his right arm, Wells alleges, caused pain and aggravated an old injury in his shoulder. According to Wells, he was told he was being arrested for intoxication, yet he was never tested and he was not charged with public intoxication.

C

The defendants, Harris and Bonner, tell a different story. According to Officer Harris, Wells

never said why he was standing on the sidewalk. Harris says that when he questioned Wells about standing in front of the entrance to the club, Wells became irate, raised his voice, and shouted obscenities. This conduct attracted a crowd and caused a traffic jam in the parking lot because passing cars slowed down to see what was happening. As he began walking to the parking lot, Wells continued to scream obscenities, and traffic came to a halt. Because Wells was causing a disturbance, Harris says that he approached Wells to arrest him for disorderly conduct. Either before Harris arrested him, or during the process of the arrest or while patting him down for weapons, however, Wells resisted violently and struck Harris. Harris then applied a neck restraint to Wells to prevent injury to himself and to bystanders, as well as to prevent Wells's escape.

When a patron of the club alerted Sergeant Bonner to the situation, Bonner came from the squad car to assist Harris who was on the ground struggling with Wells. Bonner says that when he arrived, Harris released his neck hold and that both officers raised Wells from the ground using Wells's arms and pants. They promptly escorted the struggling and cursing Wells to the patrol car. They say that he was never slammed against the car. Bonner asserts that after Wells's left arm was cuffed, Wells refused to give Bonner his right arm, so that Bonner forcibly had to bring Wells's right arm to Wells's rear to cuff it. Wells was then placed in the patrol car, but he continued to struggle while they waited for transporting officers.

II

As a result of this incident, Wells was charged with resisting a search and disorderly conduct. The disorderly conduct charge was dropped before trial. Wells was prosecuted and convicted on the charge of resisting a search. This conviction was upheld on appeal.

Wells subsequently filed this § 1983 action against Sergeant Bonner, Officer Harris, and the City of Dallas. He amended his complaint to add the nightclub as a defendant. Wells claims that the officers unconstitutionally subjected him to a false arrest, to excessive force in effecting the arrest, and to a malicious prosecution. After some discovery, Bonner and Harris filed a motion for summary judgment, arguing that Wells did not plead with sufficient specificity to overcome their defense of qualified immunity, that the force used in arresting Wells did not rise to the level of a constitutional

violation, that probable cause existed to arrest him, that he was not maliciously prosecuted, and, consequently, that they were entitled to a dismissal of the complaint based on qualified immunity. The district court denied the motion for summary judgment without opinion, and the police officers now appeal.

## III

In this interlocutory appeal, the defendant officers first argue that Wells has failed procedurally to plead his claim in sufficient detail to overcome the officers' defense of qualified immunity, and, second, they alternatively contend that they are entitled to claim qualified immunity because Wells has failed to show that they violated any clearly established constitutional right. The officers argue that there was probable cause to arrest Wells, that the force used by them was not unconstitutional in the light of clearly established law as it existed at the time of the arrest, and that the prosecution of Wells was not unconstitutional. Wells argues, to the contrary, that his pleadings are sufficient to survive Harris and Bonner's motion for summary judgment. He also argues that because material facts are at issue, the defendants' defense of qualified immunity was properly rejected by the district court and this appeal, raising only questions of immunity, should be dismissed.

## IV

A denial of a claim of qualified immunity is a "final decision" within the context of 28 U.S.C. § 1291, to the extent that the denial turns on an issue of law. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2815 (emphasis in original). In analyzing the officers' claim of qualified immunity, we are guided by the structural analysis set out by the Supreme Court in *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Before we determine whether "the constitutional right asserted by a plaintiff [was] "clearly established' at the time the defendant acted[,]" we must determine whether the plaintiff has "asserted a violation of a constitutional right at all." *Siegert,* 500 U.S. at 231, 111 S.Ct. at 1793. Thus, if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis. *See*

*id.,* 500 U.S. at 231-33, 111 S.Ct. at 1793-94.

We now turn to examine Wells's claims.

V

In this § 1983 action, Wells argues that his constitutional rights, under the Fourth Amendment and the Fourteenth Amendment, respectively, were violated by his arrest and his subsequent prosecution. He challenges his arrest on the following grounds: (1) he was falsely arrested for disorderly conduct and resisting a search because there was no probable cause; and (2) the officers applied excessive force in his arrest and search that violated his Fourth Amendment right against unreasonable searches and seizures, as well as his liberty interests under the Fourteenth Amendment. Finally, he contests his prosecution, contending that he was maliciously prosecuted in violation of his rights against unreasonable seizures under the Fourth Amendment and his liberty interests under the Fourteenth Amendment.[1] For the reasons described below, we find that his excessive force claim is precluded by *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc), and that his false arrest and malicious prosecution claims are precluded by the Supreme Court's ruling in *Heck v. Humphrey,* ---U.S. ----, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

*Heck* was decided after the district court denied qualified immunity in this case. In *Heck,* the § 1983 claim was brought by prisoner whose conviction was on appeal. The § 1983 complaint sought money damages based upon the defendant law enforcement officials' alleged unlawful acts that had led to the plaintiff's arrest and conviction. Although the *Heck* court was driven by concerns not applicable here—the relationship between habeas corpus claims under 28 U.S.C. § 2254 and civil rights claims under § 1983—the court broadly held that any § 1983 claim, which attacks the unconstitutionality of a conviction (or imprisonment, as the case may be), does not accrue until that conviction (or sentence) has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal

---

[1]Wells's theories of constitutional violations do not distinguish between any act of seizure and the act of arrest. This view is understandable and plausible in the light of the fact that seizure and arrest occurred virtually simultaneously in this case. Moreover, no separate damages arise from the seizure that would not be compensable under Wells's allegations that the arrest was made without probable cause and with excessive force.

court's issuance of a writ of habeas corpus." *Heck,* --- U.S. at ----, 114 S.Ct. at 2372. The court applied this rule further to hold that a § 1983 claim, which alleges harm based upon conduct that would imply that the conviction is invalid, does not mature until the conviction has been lawfully set aside. *Id.* In emphasizing the embryonic nature of Heck's § 1983 claim, the court spoke of the claim as "not cognizable" and proclaimed that "[w]e ... deny the existence of a [§ 1983] cause of action[,]" *id.* at ----, 114 S.Ct. at 2373, so long as the conviction stands undisturbed.

More specifically to our task today of determining the maturity of Wells's § 1983 claims, *Heck* tells us how we must proceed: we must consider "whether a judgment in favor of [Wells] would necessarily imply the invalidity of his conviction." *Id.* at ----, 114 S.Ct. at 2372. Only if we determine that holding in Wells's favor "will *not* demonstrate the invalidity" of his conviction can this action be entertained. *Id.* In the light of this guidance, we now examine his claims in greater detail.

A

We first address Wells's claim of malicious prosecution. The prosecution of Wells resulted in his conviction for resisting a search. Wells argues that he was maliciously and unconstitutionally prosecuted because the state lacked a basis in probable cause that he was guilty of the crime charged;[2] in other words, in this § 1983 civil action, Wells seeks to prove that his criminal conviction is not supported by probable cause. He thus collides with *Heck,* and the collision is fatal to his claim: the civil judgment Wells seeks necessarily implies the invalidity of his criminal conviction—which has not been reversed or otherwise lawfully set aside. In short, Wells has no cognizable claim under § 1983 for malicious prosecution and his claim will never mature so long as his criminal conviction remains undisturbed. It follows, therefore, that the defendant officers are entitled to immunity on the malicious prosecution claim and the district court's denial of immunity on this claim must be reversed.

B

_____

[2]At the time of his arrest, Wells was charged with disorderly conduct and resisting a search. The disorderly conduct charge was dismissed at some point before trial, although the record is unclear as to when the dismissal occurred. Except for the initial charge and the dismissal of the charge, the record does not reflect any prosecutorial action on the part of the state independent of the resisting a search charge and prosecution. Consequently, the record reflects no evidence that would support a constitutional claim against the defendants for malicious prosecution on the basis of the disorderly conduct charge.

(1)

We next turn to Wells's § 1983 claim based on his arrest. First, he alleges that he was subjected to a false arrest. He seeks to prove that his arrest lacked a basis in probable cause. It is immediately clear that again the rationale of *Heck* precludes his claim of false arrest. As we have noted earlier, Wells was arrested and charged with resisting a search and disorderly conduct. He was duly convicted—a conviction that still stands—for resisting a search. Although it is true that the defendant officers also charged Wells with disorderly conduct, and that Wells was not convicted on that charge, these facts are insignificant in determining whether Wells presently has a § 1983 claim for an unconstitutional arrest. The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges made—here either disorderly conduct or resisting a search—then the *arrest* was supported by probable cause, and the claim for false arrest fails. Thus, Wells's proof to establish his false arrest claim, i.e., that there was no probable cause to arrest either for disorderly conduct *or* for resisting a search, would demonstrate the invalidity of Wells's conviction for resisting a search. *Heck,* --- U.S. at ----, 114 S.Ct. at 2372. Consequently, *Heck* dictates that his claim for false arrest is not cognizable in the absence of the invalidation of his conviction for resisting a search, which, as we have noted, has not occurred.

(2)

Finally, we come to Wells's claim that the police officers applied excessive force during his arrest. As we have sufficiently amplified, under *Heck* a claim based upon alleged conduct that would have the consequences of demonstrating the invalidity of a conviction or sentence is not cognizable under § 1983. *Id.* at ----, 114 S.Ct. at 2372. "But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (footnotes omitted) (emphasis in original). For the purposes of our analysis of the defendant officers' motion for summary judgment, we will assume that a factual dispute exists whether the degree of force applied in effecting this arrest was unreasonable, and we will further

assume, without deciding, that a finding of excessive force would not "imply the invalidity" of his conviction for resisting a search. *Id.*

In this immunity appeal, we must next determine whether Wells's proffered evidence demonstrates the basis for the violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231-32, 111 S.Ct. at 1793. The Fourth Amendment with its reasonableness standard governs claims of excessive force during arrest. *Spann v. Rainey,* 987 F.2d 1110 (5th Cir.1993). The conduct of the public official involved in an arrest is evaluated under the law as it existed at the time of the incident, not current law. *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1185 (5th Cir.1990). The incident forming the basis of this suit occurred in 1990, when the standard for excessive force claims was governed by *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc).[3] *Johnson* holds that a plaintiff can recover for a constitutional claim of excessive force only by establishing that he suffered "(1) significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Johnson,* 876 F.2d at 480. If the plaintiff fails to prove any one of these elements, his claim also fails. *Id.*

Wells's claim fails to satisfy the second element of the excessive force test because his injury did not result "directly and only from" the officers' use of force. It is true that the record reflects that his shoulder was injured by the officers during the arrest. Wells admits, however, and other portions of the record also reflect, that the injury was an exacerbation of an old shoulder injury for which Wells previously had undergone surgery. Thus, Wells's injury did not result "directly and only from" the officers' use of force.[4] Consequently, we hold that he has not stated a claim for violation of a constitutional right against the defendant officers, and thus, the officers are entitled to immunity on the excessive force claim. Because the defendants are entitled to the defense of qualified immunity on the claims of false arrest and excessive force, the district court's denial of immunity based on the

---

[3]Wells argues that the standard governing excessive force is that found in *Knight v. Caldwell,* 970 F.2d 1430, 1432 (5th Cir.1992). This reasoning is misguided, however, since the incident forming the basis of the suit occurred two years prior to the *Knight* decision. *See Harper v. Harris County,* 21 F.3d 597 (5th Cir.1994).

[4]It is also clear from the record that the alleged "choke hold" applied by the defendant officers to Wells did not result in a significant injury under *Johnson v. Morel.*

arrest must be reversed.

                                    VI

        We close by summarizing our holding.  We have held that Wells's § 1983 claims for false arrest and malicious prosecution are not cognizable under *Heck* because each of these claims imply the invalidity of his conviction, which was upheld on appeal and which has not been successfully challenged.  Thus, with respect to each of these claims, he has failed to establish a constitutional claim against the defendant officers.  The officers are therefore immune from suit on these claims.  Furthermore, Wells has failed to show that the defendant officers violated his clearly established constitutional rights in effecting his arrest because the force they used did not inflict a "significant injury" within the meaning of *Johnson v. Morel;*  consequently, the defendant officers are entitled to immunity from suit on this claim.  In sum, the district court erred in denying immunity, and we reverse.  Because this interlocutory appeal only involved immunity questions, we remand this case to the district court for such further proceedings concerning the remaining parties as may be appropriate and for dismissal of the complaint against the defendants, Sergeant Donald Bonner and Officer Kevin L. Harris.

        REVERSED and REMANDED.