Mary Elizabeth DUNN, Plaintiff–Appellee, Cross–Appellant,

v.

Mike DENK, Defendant–Appellant, Cross–Appellee.

Nos. 93–1964, 93–9066.

United States Court of Appeals, Fifth Circuit.

March 19, 1996.

Curtis B. Stuckey, Nacogdoches, TX, Stephen Robert Marsh, Wichita Falls, TX, for Dunn.

M. Lawrence Wells, Ann Kraatz and Karen Denise Matlock, Office of the Attorney General for the State of Texas, Austin, TX, for Denk.

Before POLITZ, Chief Judge and REAVLEY, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges.

KING, Circuit Judge: *

This is a case controlled by the law applicable from 1989 to 1992, a window created by our decision in *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc), and *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the decision of the Supreme Court effectively overruling it. *See Harper v. Harris County, Texas,* 21 F.3d 597, 600 (5th Cir.1994).

I

A.

The facts concerning Officer Denk's arrest of Ms. Dunn in 1990 and Dunn's ensuing suit under 42 U.S.C. § 1983 against Denk for, *inter alia,* excessive use of force in effecting her arrest are set out in full in the panel opinion and dissent, *Dunn v. Denk,* 54 F.3d 248 (5th Cir.), *reh'g en banc granted and opinion vacated by* 54 F.3d 248, 257 (5th Cir.1995). As the panel majority described it, "[p]hysically, Dunn suffered only bruises but her psychological injury was substantial." *Id.* at 249. The jury found excessive force, but it did not award compensatory damages. It did award $10,000 in punitive damages. The district court entered judgment on the jury verdict, and Denk appealed. The question before us is whether Denk was entitled to qualified immunity as a matter of law.

We begin by determining whether Dunn alleged the violation of a clearly established constitutional right. She did so by alleging "excessive force . . . aris[ing] in the context of an arrest." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Counsel for Denk correctly concedes that whatever injury requirement (if

---

* Judges GARWOOD, E. GRADY JOLLY, PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS, EDITH H. JONES, JERRY E. SMITH, DUHÉ, RHESA HAWKINS BARKSDALE, EMILIO M. GARZA and DeMOSS concur in the judgment and Part I of the opinion. Chief Judge POLITZ and Judges REAVLEY, GARWOOD, PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS, WIENER, BENAVIDES, STEWART, PARKER and DENNIS concur in Part II of the opinion.

any) may remain after *Hudson* respecting a claim for excessive force in arrest is satisfied here. However, Denk contends that for purposes of qualified immunity we look to the state of the law when the arrest at issue occurred. *Harper*, 21 F.3d at 601. Specifically, Denk's contention—a contention with which the panel majority originally agreed but has apparently abandoned[1]—is that for this January 1990 arrest, a Fourth Amendment excessive force claim was controlled by *Johnson*, and that under *Johnson*, Dunn was required to prove the following elements:

"(1) a significant injury, which

(2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was

(3) objectively unreasonable." [*Johnson*, 876 F.2d] at 480.

The argument continues that in *Johnson*, we insisted that significant injury was an element of the constitutional claim, an objective, validating event of the reasonableness of force used in making an arrest. Finally, Denk points that in *Johnson*'s footnote 1, we observed:

"We think it unlikely that such a significant injury will be caused by unnecessary force without significant *physical* injury. However, on the facts before us here, we do not decide whether a significant but non-physical injury would be legally sufficient." *Id.* at 480 n. 1.

### B.

■ Given the explicit language of *Johnson*, and its footnote 1 in particular, we conclude that the law at the time of this arrest was uncertain regarding whether "a significant injury will be caused by unnecessary force without significant physical injury." On the present facts, Denk was entitled to

1. The panel majority, Chief Judge Politz and Judge Reavley, specifically held:
   Although no longer required, at the time of this incident significant injury was a necessary element of an excessive force claim. Accordingly, to defeat Denk's qualified immunity defense Dunn was obliged to prove a significant injury.
   *Dunn v. Denk*, 54 F.3d at 249. The dissent's newly-minted position—"[o]nce an officer uses

qualified immunity from the claims asserted in this case.

### II

■ In *Johnson*, we also distinguished between injuries resulting from excessive force and those resulting from the justified use of force. Looking at causation, we limited recovery to injuries that "resulted directly and only from the use of force that was clearly excessive to the need." *Johnson*, 876 F.2d at 480. We reject the contention that *Johnson*, in instances where its threshold requirement of significant injury was satisfied, precluded recovery for aggravation of preexisting injury caused by the use of excessive force. A trier of the fact can compensate only for injury caused by the use of excessive force. There can be no award for injury caused by reasonable force. *Johnson*'s clause "(2)" did not speak to the recovery for injuries for which a person is uniquely susceptible beyond insisting that compensation be for an injury caused by the excessive force and not a reasonable force. In sum, this particular language of *Johnson* said no more, and we say no more today. The holding of *Wells v. Bonner*, 45 F.3d 90 (5th Cir.1995), is not to the contrary. The aggravation of the old injury was not attributable to the excessive component of the force used. Rather, the aggravation of Wells's old shoulder injury was claimed to have been caused by handcuffing his hands behind his back, a routine police procedure. *Id.* at 92.

The judgment below is REVERSED.

RHESA HAWKINS BARKSDALE, Circuit Judge, joined by E. GRADY JOLLY, EDITH H. JONES, JERRY E. SMITH, EMILIO M. GARZA and DeMOSS, Circuit Judges, concurring in part and dissenting in part:

"Even if [Officer Denk's] conduct violates a constitutional right, he is entitled to qualified

objectively unreasonable force to effect an arrest, he loses his qualified immunity, whether the other elements of an excessive force claim [e.g., injury to the arrestee] are clearly established or not," *Dunn v. Denk*, 79 F.3d 401, 407 (5th Cir. 1996) (Reavley, J., dissenting)—is devoid of citation for the obvious reason that it finds no support in the case law.

immunity if [his] conduct was objectively reasonable." *Salas v. Carpenter,* 980 F.2d 299, 310 (5th Cir.1992); *Walton v. Alexander,* 44 F.3d 1297, 1301 (5th Cir.1995) (en banc); *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993). This factor is "assessed in light of the legal rules clearly established at the time" of the January 1990 incident. *Salas,* 980 F.2d at 310. *Johnson v. Morel,* 876 F.2d 477 (5th Cir.1989) (en banc), controlled from early July 1989 until late February 1992, when its significant injury prong was overruled by *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). *See Harper v. Harris County, Tex.,* 21 F.3d 597, 600–01 (5th Cir.1994).

### I.

Dunn maintains that her emotional injury satisfies *Johnson*'s significant injury requirement. But, as covered in part I of Judge King's opinion, it was not clearly established at the time of the incident (only six months after *Johnson* was rendered) that a non-physical injury, without significant physical injury, could satisfy this requirement. 876 F.2d at 480 & n. 1. In fact, it was just the opposite. Therefore, I concur in part I of the opinion by Judge King, which agrees that qualified immunity must be accorded Officer Denk.

Along that line, I must register concern over the dissents' refusal to recognize our controlling law at the time of the incident. That by Judge Dennis is especially remarkable; he simply declares *Johnson,* our en banc decision, "void ab initio", because he reads it as conflicting with *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), rendered shortly before *Johnson* and quoted from at length in it. Indeed, the *Johnson* en banc court began by stating that it was "[g]uided by" *Graham.* 876 F.2d at 478.

No authority need be cited for our rule that we are bound by our prior decisions, unless there is a superseding Supreme Court or en banc decision. There is neither in this instance. Instead, our court is faulted by Judge Dennis for supposedly, in an en banc opinion, not complying with an earlier Supreme Court opinion. Being able to decide individually whether one of our opinions applies earlier controlling law correctly would quickly usher in judicial anarchy. *See Grabowski v. Jackson County Public Defenders Office,* 47 F.3d 1386, 1398 (Smith, J., dissenting), *reh'g en banc granted,* 47 F.3d at 1403 (5th Cir.1995). Obviously, this is why our court long ago adopted our rule honoring our precedent.

### II.

As for part II of Judge King's opinion, I must respectfully dissent. Her part I decides the case; it renders judgment for Officer Denk. Therefore, there is no need to proceed further; there is no need to address other aspects of the *Johnson* test—in this instance, recovery *vel non* for aggravation of a preexisting injury. At best, this court is rendering an advisory opinion. At worst, it is offering up language that may come back to haunt us. If nothing else, it has created a judicial quagmire that will bog down the bench and the bar, at considerable cost in time and expense, as both try to determine what weight should be accorded part II.

That is the legacy of *dictum,* "the gift that keeps on giving". And, part II is *dictum,* plain and simple. We have long known to avoid engaging in such an exercise. "It is a rule of universal application by the Supreme Court, as well as the other courts of this country, that no opinion can be considered as binding authority unless the case calls for its expression." *Indiviglio v. United States,* 249 F.2d 549, 561 (5th Cir.1957) (*citing Carroll v. Carroll's Lessee,* 57 U.S. (16 How.) 275, 14 L.Ed. 936 (1853)), *rev'd on other grounds,* 357 U.S. 574, 78 S.Ct. 1381, 2 L.Ed.2d 1547 (1958). This case does not call for this expression.

Accordingly, I concur in part I of Judge King's opinion, but must dissent from part II.

REAVLEY, Circuit Judge, joined by POLITZ, Chief Judge, WIENER, BENAVIDES, STEWART, PARKER and DENNIS, Circuit Judges, dissenting.

Without the slightest justification beyond an arrest warrant for a traffic offense, a

Texas patrolman injured a woman by pulling her out of her car, putting her face-down into a ditch, kneeling on top of her and handcuffing her arms behind her. This court now holds that the patrolman is immune from liability for his violation of her civil rights. In the 1990's! In the Fifth Circuit! I dissent.

The panel opinion, 54 F.3d 248 (5th Cir. 1995), correctly states the facts of the case as it comes to us. The jury found that the officer employed force that was clearly excessive and objectively unreasonable, causing a significant injury to the plaintiff. She and the driver of the car testified that the officer jerked her from the car and threw her down into the ditch. She said that her arm, hip and wrists were hurt. A photograph introduced into evidence showed a large discoloration on her upper arm where she said the officer grabbed her. Her psychiatrist testified that she was traumatized emotionally and could suffer psychic instability for years to come.

I. Immunity to Use Excessive Force

Even though the jury verdict, amply supported by the evidence, found the force exercised by the officer to have been objectively unreasonable and excessive, this court renders judgment for the patrolman on qualified immunity grounds. This is a distortion of the law of qualified immunity. The Fourth Amendment protects all persons against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An officer who effects an arrest by excessive force against the person acts unreasonably and violates the Fourth Amendment rights of the arrestee. There can be no qualified immunity for that officer.

Qualified immunity is a practical doctrine designed to balance several competing interests. On the one hand, damage suits against officials deter unlawful conduct and vindicate the constitutional rights of victims of official misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 813–15, 819–21, 102 S.Ct. 2727, 2736, 2739, 73 L.Ed.2d 396 (1982). On the other hand, social costs inevitably flow when government officials are subjected to lawsuits. These social costs include the expenses of litigation, the diversion of energy from official business, the deterrence of able citizens from acceptance of public office, and the danger that fear of suit will dampen the ardor with which officials discharge their duties. *Id.* at 813–15, 102 S.Ct. at 2736.

Are any of the interests underlying qualified immunity served by granting immunity to an officer who uses objectively unreasonable force to effect an arrest? Certainly the public wants to deter such action, and the victim has an interest in being made whole from the damages the arrest caused. These interests are not served by granting immunity when objectively unreasonable force is used. On the other hand, need we fear that suits against officers who use objectively unreasonable force will "dampen the ardor with which such officers discharge their duties?" On the contrary, it is our fervent hope that such suits will dampen uncontrolled ardor. It also seems clear that the social costs of lawsuits and diversion of energies of the officer are well worth paying when the officer uses objectively unreasonable force, else such officers should be granted absolute immunity and the Fourth Amendment should be rewritten.

Qualified immunity is given to an officer to protect him from costly and troublesome litigation "unduly inhibit[ing] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The inquiry is whether the totality of the circumstances justified the actions by which the seizure was carried out. *Tennessee v. Garner*, 471 U.S. 1, 6–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). The officer is not immune if his actions violated clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 528–30, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (citing *Harlow*, 457 U.S. at 817–19, 102 S.Ct. at 2738). The law is clearly established that an unreasonable seizure violates the Fourth Amendment and is grounds for § 1983 liability. *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). And the Court has said that the Constitution protects against the unnecessary infliction of pain. *Hudson v. McMillian*, 503 U.S. 1, 6–8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992);

*Ingraham v. Wright,* 430 U.S. 651, 674–75, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).

The Court does not allow a federal cause of action for every unjustified physical contact. "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9–10, 112 S.Ct. at 1000 (quoting *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)). Undoubtedly, the same rule applies to excessive force claims under the Fourth Amendment. If the pleading, a *Spears*[1] hearing, or summary judgment record demonstrates conduct and effect of so minor a degree, the officer is entitled to judgment. But surely not because he enjoyed immunity to effect the arrest, or abuse the prisoner, with excessive force.

In the present case the officer used objectively unreasonable force to arrest the plaintiff, and—in addition to lasting psychological harm—injured her arm, hip, and wrists in the process. That ends the qualified immunity inquiry.

The majority, however, are not ended. They go to a footnote in *Johnson v. Morel,* where the en banc court suggested that a non-physical injury might in that case not rise to the significance required for a cause of action.[2] The court reasons today that, because this footnote could be used to argue that psychological harm could not be the significant injury required for recovery in 1990, the law in this circuit at the time of the arrest gave the patrolman a defense and immunity.

To understand the court's misreckoning we need to go back to the panel opinion in *Johnson v. Moral,* 843 F.2d 846 (5th Cir. 1988), where the majority there retooled *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir.1981), to require a severe physical injury

as a necessary element of a § 1983 action for the use of excessive force by a state officer. Judge Thornberry's dissent pointed out the error, see *Johnson,* 843 F.2d at 848, but this court has continued to hold that this erroneous version of *Shillingford* was Fifth Circuit law from 1981 until 1989 when the *Johnson v. Morel* en banc decision downgraded the necessary injury from severe to significant.

The Supreme Court corrected us on the severe/significant injury requirement in *Hudson,* but we have retained it to immunize the conduct of officers at a time prior to the date of the Supreme Court's *Hudson* opinion. We have held that, so long as the prevailing law required proof of a significant injury (after *Johnson v. Morel*) for the victim to recover damages, there could be no excessive force unless it did cause such an injury. *See, e.g., Rankin v. Klevenhagen,* 5 F.3d 103, 108–09 (5th Cir.1993); *Spann v. Rainey,* 987 F.2d 1110, 1114–16 (5th Cir.1993); *Valencia v. Wiggins,* 981 F.2d 1440, 1448–49 (5th Cir. 1993); *Mouille v. City of Live Oak,* 977 F.2d 924, 928 (5th Cir.1992); *King v. Chide,* 974 F.2d 653, 656–58 (5th Cir.1992); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1184–85 (5th Cir.1990); *Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990).

It is a curious twist of law. What, we should ask, is excessive force or objectively unreasonable force? What is its measure? What is its inquiry? Obviously whether it is objectively unreasonable and excessive to effect the arrest, to overcome the resistance or malefaction. The law, clear and certain and known by all reasonable officers, has forbidden force excessive to that purpose. Whether or not the Fifth Circuit has allowed the officer a defense where the excessive force caused lesser injury is a different question. But we have persisted in giving immunity to officers who violated acknowledged constitutional rights by the use of excessive force to arrest, no matter whether any force was justified and no matter how great the force

---

**1.** *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

**2.** The footnote reads: "We think it unlikely that such a significant injury will be caused by unnecessary force without significant *physical* injury.

However, on the facts before us here, we do not decide whether a significant but non-physical injury would be legally sufficient." *Johnson v. Morel,* 876 F.2d 477, 480 n. 1 (5th Cir.1989) (en banc).

employed, so long as the arrestee recovered from his injuries.

Qualified immunity is concerned only with the reasonableness of an officer's actions. Once an officer uses objectively unreasonable force to effect an arrest, he loses his qualified immunity, whether the other elements of an excessive force claim are clearly established or not.

We can only hope that the manuals and instructions to law enforcement officers have not told them that the Constitution and laws of the United States were so uncertain about their *conduct* and the *rights* of the public. That would be to "place various kinds of state-sponsored torture and abuse—of the kind ingeniously designed to cause pain but without a tell-tale 'significant injury'—entirely beyond the pale of the Constitution." *Hudson,* 503 U.S. at 12–14, 112 S.Ct. at 1002 (Blackmun, J., concurring).

## II. Immunity Even to Cause Significant Injury

### A. Emotional Injury.

Even if the officer were entitled to immunity so long as no significant injury was suffered by his victim, that would not warrant the court's dismissal of this plaintiff's case. Because, clearly, she did suffer a significant injury. There was evidence of physical and psychological harm, although the jury was not asked to allocate significance between those harms. The majority choose the emotional injury for the only significance and hold that an officer would not know in 1990 that he would be liable for a brutal arrest causing non-severe physical injury coupled with severe *emotional* injury.

Let us suppose that officers had lawyers to advise them on how to escape liability while mistreating arrestees. How much leeway would counsel find in the *Johnson v. Morel* footnote? The footnote speaks of what is likely and refuses to decide "on the facts before us here" (where the plaintiff had been humiliated by racial epithets) "whether a significant but non-physical injury would be legally sufficient." *See supra,* note 2. The Supreme Court in *Carey v. Piphus* held in 1978 that damages were recoverable for men-

tal anguish in a § 1983 action. 435 U.S. 247, 262–64, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978). The *Johnson v. Morel* decision itself cited *Carey* for that proposition. In *Lynch v. Cannatella,* 810 F.2d 1363, 1376 (5th Cir. 1987), decided under the *Shillingford* regime, the Fifth Circuit upheld psychological injury as a sufficient injury to support recovery in an excessive force case. Other cases in this circuit held the same. *See, e.g., Checki v. Webb,* 785 F.2d 534, 538 (5th Cir.1986) (under *Shillingford,* "[a] police officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face may not cause *physical* injury, but he has certainly laid the building blocks for a section 1983 claim against him. Similarly, where a police officer uses a police vehicle to terrorize a civilian ... a court may conclude that the officers have crossed the 'constitutional line.' "); *Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir. 1986) (a young girl who was in a trailer when a deputy sheriff unloaded a round of buckshot into it would prevail on a claim for excessive force, despite suffering no physical injuries, if she could prove the deputy acted at least recklessly); *Keyes v. Lauga,* 635 F.2d 330, 336 (5th Cir.1981) (plaintiff could recover for excessive force because she suffered mental injuries along with some bruises, a low-grade concussion, and numbness in her left thumb); *see also Foulds v. Corley,* 833 F.2d 52, 55 (5th Cir.1987) (plaintiff's failure to allege "lasting harm" was not fatal to his § 1983 claim of cruel and unusual punishment because he alleged sufficient pain, suffering, and mental anguish to warrant relief).

Would the legal adviser to the brutish policeman have any reason to believe that this brief footnote did more than reserve judgment on the facts of *Johnson v. Morel* itself or that it injected uncertainty about psychological injury into the law, limiting the holding of *Carey v. Piphus* and overruling established law of the circuit? I think not.

The legal adviser would not think the footnote applicable to the present case for the further reason that this is not a case of a non-physical injury. The plaintiff suffered physical harm as well as emotional harm. The physical injuries were inextricably intertwined with the mental injuries, and the two

combined to produce a single significant injury. Nothing in the *Johnson v. Morel* footnote suggests any uncertainty under these circumstances. The Seventh Circuit held in *Bailey v. Andrews*, 811 F.2d 366 (7th Cir. 1987), that "Bailey's physical injuries combined with the emotional distress he testified to could amount to compensable injury" under the Seventh Circuit's then-existing "severe injury" requirement. *Id.* at 373.

### B. Open Season On The Infirm

The panel dissent, 54 F.3d at 252, argued that under the circuit precedent of *Wells v. Bonner*, 45 F.3d 90 (5th Cir.1995), the significant injury requirement for an excessive force cause of action could not be met by the aggravation of a preexisting condition. I agree with Judge King that this is an erroneous reading of *Johnson v. Morel*, and I would not accept such a pernicious rule in any event.

### Conclusion

This court today goes far afield in the search for uncertainty in the 1990 law, beyond where any lawyer—let alone a policeman—might have gone. And the court disregards entirely the officer's conduct as it grants him immunity. I dissent from the rendition of judgment excusing the defendant from liability.

DENNIS, Circuit Judge, dissenting.

I join in the dissenting opinion of Judge Reavley but write further to express my opinion that the significant injury element of *Johnson v. Morel*, 876 F.2d 477 (5th Cir. 1989) was void ab initio as controlling precedent because it was clearly in conflict with the holding of the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) for the reasons set forth by Judge Rubin in his dissenting opinion in *Johnson v. Morel*, 876 F.2d at 480 and for the additional following reasons.

The *Johnson v. Morel* three element test, based on a threshhold significant injury requirement, was inherently inconsistent with the more fluid Fourth Amendment "objective reasonableness" standard set forth by the Supreme Court in *Graham*. In *Graham*, the Supreme Court held that (1) claims under § 1983 alleging that a law enforcement officer used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen were properly analyzed under the Fourth Amendment's "objective reasonableness" standard, and (2) under that Fourth Amendment standard:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. See *Tennessee v. Garner*, 471 U.S. at 8–9, [105 S.Ct. 1694, 1699–1700] (The question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure"). 490 U.S. at 396 [109 S.Ct. at 1871–72] (Citations omitted)

This Fourth Amendment standard which requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake," a standard that is "not capable of precise definition or mechanical application" and must be considered under "the totality of the circumstances" and with the "sort of seizure involved," is evidently incompatible with *Johnson v. Morel*'s attempt to apply a three-element stereotypical test indiscriminately to all Fourth Amendment excessive force claims

lodged against law enforcement officials under § 1983. In fact, the Supreme Court in *Graham* expressly rejected the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard" *Id.* 490 U.S. at 393, 109 S.Ct. at 1870–71 and reversed the Fourth Circuit Court of Appeals for applying in that Fourth Amendment case the four-factor generic test that had originated in *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), the generic rigidity of which resembled that of the *Johnson v. Morel* test and called for the consideration of: (1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. See *Graham v. Connor*, 490 U.S. at 390, 109 S.Ct. at 1868–69.