IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-40285
Summary Calendar

_____

VERLA MARTINEZ,

                                              Plaintiff-Appellant,

versus

RODNEY SMITH, Deputy, Anderson County;
BRIAN DANIELS, Deputy, Anderson County;
ANDERSON COUNTY, TX,

                                              Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:98-CV-246
--------------------

November 4, 1999

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        Verla Martinez appeals an order granting the defendants'
motion for summary judgment and dismissing her 42 U.S.C. § 1983
complaint with prejudice.  Viewing the facts in the light most
favorable to Martinez, the district court held that the individual
defendants, Officers Rodney Smith and Brian Daniels, were entitled
to qualified immunity on her claims that they unlawfully detained
her, using excessive force in doing so.  The court also dismissed
a claim against the officers' employer, Anderson County, because

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Martinez had shown no constitutional injury at the hands of the officers.

In an appeal from summary judgment, we review the record de novo. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

Whether a public official is qualifiedly immune depends on two inquiries. Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 223 (5th Cir. 1999). First, a defendant is entitled to qualified immunity when a plaintiff has failed to allege the violation of a clearly established constitutional right. Id. Second, the defense of qualified immunity will succeed if the defendant's conduct was objectively reasonable at the time in light of clearly established law. Id.

Martinez's complaint argued that the officers violated her right to be free from detention in the absence of "probable cause, exigent circumstances, or any other good reason." Although we have not addressed the matter in a published opinion, other courts have held that individuals have a Fourth Amendment right to be free from detention for psychological evaluation unless there is

probable cause to believe that the person may harm herself or others.  S.P. v. City of Takoma Park, Md., 134 F.3d 260, 266 (4th Cir. 1998); Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir. 1991) (citing cases); Chathas v. Smith, 884 F.2d 980, 987 (7th Cir. 1989).  In addressing qualified-immunity arguments in this context, these courts have cautioned that the asserted right must be clearly established in more than a general sense.  See, e.g., Maag, 960 F.2d at 775.  We agree that the relevant test is whether a reasonable officer would, under all of the circumstances, have had probable cause to believe the plaintiff was dangerous.  Id. at 775-76; Chathas, 884 F.2d at 987.  See also S.P., 134 F.3d at 266 (holding that "to establish liability, [the plaintiff] had to allege facts demonstrating that the established contours of probable cause were sufficiently clear at the time of the seizure such that the unlawfulness of the officers' actions would have been apparent to reasonable officers").  The nature of the "danger" posed, however, has not been clearly articulated in the caselaw and necessarily yields latitude to the reasonably-founded judgment of the officers at the scene.  See e.g., S.P., at 266-67.

Viewing the evidence in the light most favorable to Martinez, we hold that a reasonable officer could have believed that she posed a danger to herself.  Someone familiar with Martinez who stated recent contact reported that she was suicidal.  See S.P., 134 F.3d at 268 (finding a detention reasonable when based on a call from a "concerned third-party"); Maag, 960 F.2d at 775-76 (involving reports of family members).  Although she insisted she was fine, Martinez confirmed to the officers that she and her ex-

husband had just had a disagreement. Martinez attempted to close the door on the officers before they could talk in any detail. Furthermore, although Martinez contends that her actions were always rational, some of the conduct she admits could well have seemed odd to reasonable officers. After Officer Smith prevented her from closing the door, Martinez abruptly sat on the floor. Later, Martinez ran from the officers into the house--where, the officers had been told, a gun was somewhere located. As the district court noted, the presence of a firearm in the house and Martinez's uncooperativeness "certainly provide[d] grounds for alarm."

In addition, the district court cited to a Texas statute that authorizes a peace officer to take a person into custody without a warrant if the officer reasonably believes that (i) a "person is mentally ill," (ii) there is a "substantial risk of serious harm to the person . . . unless the person is immediately restrained," and (iii) there is insufficient time to obtain a warrant. TEX. HEALTH & SAFETY CODE ANN. § 573.001(a). In holding that officers were shielded by qualified immunity in similar circumstances, other courts have noted that the officers adhered to the relevant involuntary-commitment statute. S.P., 134 F.3d at 268; Maag, 960 F.2d at 776. We agree that the Texas statute buttresses the officers' argument that they acted within their clear authority.

Based on the Texas statute, the information from a third party, and their own observations, the deputies had probable cause

to take Martinez into protective custody.  The district court did not err in dismissing this claim.

Martinez argues that the district court erred in rejecting her excessive-force claim.  The Fourth Amendment, with its standard of reasonableness, governs claims of excessive force during arrest.  Graham v. Connor, 490 U.S. 386, 394 (1989).  In order to state a claim for excessive force in violation of the Constitution, Martinez needed to allege (i) an injury, (ii) which resulted directly and only from a use of force that was clearly excessive to the need, and (iii) that the excessiveness was clearly unreasonable.  Dunn v. Denk, 79 F.3d 401, 403 (5th Cir. 1996) (en banc).  In gauging the reasonableness of force used, a court must balance the amount of force used against the need for the force. Spann v. Rainey, 987 F.2d 1110, 1115 (5th Cir. 1993).

The district court held that Martinez could show neither a use of force that was clearly excessive to the need nor that any excessiveness was objectively unreasonable.  We agree.  Accepting Martinez's version of events, Officer Smith grabbed Martinez's wrist through a closing door as she attempted to shut the door on the officers; later, when Martinez attempted to run from the deputies, Smith caught her, bent her over a freezer, and handcuffed her.  Grabbing Martinez's wrist through the door was not "clearly excessive" to Smith's need to maintain contact with Martinez, so that he could have a sufficient time to evaluate her to determine whether she might be suicidal.  In addition, Officer Smith's limited use of force in handcuffing Martinez was not objectively unreasonable.  Martinez does not dispute that the deputies were

told she had a gun in the house, and she admits that she ran from the deputies into the house immediately before she was handcuffed. Thus, the officers were confronted with an uncooperative, possibly suicidal person who might have access to a firearm. Under the circumstances, the deputies' decision to secure Martinez and handcuff her was objectively reasonable. See Graham, 490 U.S. at 596-97 (noting that the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation"). Accordingly, the district court did not err in dismissing Martinez's excessive-force claim.

Martinez argues that the district court erred in dismissing her claim against Anderson County. Blue brief, 27-29. Because she cannot show any constitutional violation by the individual defendants, however, she cannot show any constitutional injury that is attributable to the county. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (noting that if no constitutional injury is shown, any infirmities in the city's policies are "quite beside the point").

AFFIRMED.