# THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2013

No. 12-20779
Summary Calendar

Lyle W. Cayce
Clerk

GEORGE H. RUSSELL,

Plaintiff–Appellant

v.

WESLEY ALTOM, Individually, and in his official capacity; JASON RIDDLE; ENTERGY TEXAS, INC.,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-2511

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant George H. Russell appeals the district court's judgment in favor of Defendants–Appellees Wesley Altom, Jason Riddle, and Entergy Texas, Inc.  For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20779

## Background

In the wake of Hurricane Ike, Nirow, Inc., a company that specializes in utility right-of-way maintenance, performed tree-trimming services under contract with Entergy Texas, Inc. ("Entergy"), an electricity provider. On September 14, 2008, George H. Russell observed Nirow employees trimming a tree on his property and confronted the crew. The crew's supervisor informed Russell that Nirow was performing deferred maintenance in preparation for the next hurricane, prompting Russell to complain that the crew should work to restore power rather than perform preventative maintenance. Russell also complained that the crew was using an improper trimming method that was damaging the tree. Jason Riddle, an Entergy employee, then ordered the crew to continue cutting the tree on Russell's property instead of moving to an area where downed tree limbs were causing power outages. When Russell refused to leave, Riddle contacted the police, and Officers Ron Cleere and Wesley Altom arrived within minutes. Cleere advised Russell not to interfere with the crew, and then, believing the situation to be resolved, both officers left the scene.

After leaving the scene, Altom traveled to the Walker County Emergency Operations Center to discuss Russell's conduct with Walker County District Attorney David Weeks. The two discussed whether Russell had committed a crime, and Weeks advised that Russell may have violated an emergency management plan order devised for the hurricane recovery effort. Altom and Cleere then discussed the possibility of arresting Russell but took no action.

The next day, the same Nirow crew was trimming trees near another of Russell's properties. Russell came to the area and began photographing the crew's work, which prompted Riddle to again call the police. Cleere and Altom responded, and one of the crew members advised Cleere that the crew warned Russell to leave because he was in a dangerous area but that Russell ignored the warning. Instead, the crew member stated, Russell moved closer, causing the

2

No. 12-20779

crew to stop working while Russell remained in the area. Cleere arrested Russell for violating the emergency management plan order and had him transported to the county jail. Altom then consulted with Weeks to determine the proper charge against Russell. Weeks contacted the Texas Attorney General's Office, which suggested charging Russell with interfering with public duties in violation of Texas Penal Code section 38.15.

In November 2008, Weeks presented Russell's case to a grand jury. The grand jury ultimately decided to upgrade the offense from misdemeanor status to felony status and returned a true bill. The indictment contained six felony counts constituting three separate violations of two different statutes: Texas Utilities Code section 186.004 and Texas Revised Civil Statute article 1446a, section 5.[1] Three months later, the indictment was dismissed.

On July 14, 2010, Russell filed this lawsuit in the Southern District of Texas, alleging various constitutional claims through 42 U.S.C. § 1983, as well as Texas state law claims of trespass and negligence. For the state law claims, Russell alleged that Nirow, under the direction of Riddle and Entergy, trespassed onto his land beyond any lawful easement right they may have possessed. Russell alleged that the tree trimmed by the crew was located eight feet beyond the utility easement granted by the city and had no limb within three feet of the power line. Russell also alleged that Nirow, Riddle, and Entergy were "negligent and/or reckless" in trimming his trees, causing unnecessary injury to his property. For the constitutional claims, Russell alleged that Altom violated his rights under the First, Fourth, and Fourteenth Amendments. Specifically, Russell alleged that his arrest was in retaliation for

---

[1] Texas Utilities Code section 186.004 governs unlawful picketing, threats, or intimidation intended to disrupt the service of a public utility. Section 5 of article 1446a provides that any person "who interferes with, or commits any act of sabotage affecting any machinery, equipment, or facilities of any . . . utility for the purpose of disrupting the service provided by such utility, or for the purpose of preventing the maintenance of such service, shall be guilty of a felony." Tex. Rev. Civ. Stat. art. 1446a, § 5.

his decision to exercise his right to freedom of speech under the First Amendment, that his arrest was unlawful under the Fourth Amendment, and that he was deprived of "his procedural and substantive due process rights and his liberty interests under the Fourteenth Amendment."

The district court referred the matter to a magistrate judge, who first addressed the motions to dismiss filed by Nirow, Riddle, and Entergy. Finding that Russell had sufficiently alleged only a trespass claim against Nirow, the magistrate judge recommended dismissing the trespass action brought against Riddle and Entergy and the negligence action brought against all three. Next, the magistrate judge addressed Altom's motion for summary judgment on Russell's First and Fourth Amendment claims. Concluding that the grand jury's finding precluded both of these claims, the magistrate judge recommended granting Altom summary judgment. Finally, the magistrate judge addressed Altom's motion to dismiss Russell's substantive and procedural due process claims. Finding that Russell's allegations provided no support for the conclusion that Altom was responsible for depriving Russell of any due process, the magistrate judge recommended granting the motion to dismiss. The district court adopted each of the magistrate judge's recommendations, dismissing the due process and state law claims and granting Altom summary judgment on Russell's First and Fourth Amendment claims. The district court declined to exercise supplemental jurisdiction over the trespass action against Nirow—the only remaining claim—and remanded the case to state court. Russell timely appealed.

## Discussion

"We review de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). We also review de novo the grant of summary judgment, applying

the same standards as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Summary judgment is appropriate if the moving party establishes that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

We first address Russell's argument that the district court erred in dismissing his trespass and negligence claims against Riddle and Entergy.[2] "Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property." *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011). This includes when one "intentionally causes a third person to enter land in the possession of another." *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied). "Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry, if it be a trespass." *Id.* (quoting *Restatement (Second) of Torts* § 158 cmt. j (1977)).

Significantly, Russell does not allege that Riddle or Entergy ever entered upon his property without his consent. Instead, he argues that Nirow employees entered upon his land under the direction of Riddle and Entergy. Thus, to state a claim, Russell must have alleged sufficient facts to establish that Riddle or Entergy intentionally caused the Nirow employees to enter Russell's land. He failed to satisfy this burden.

The alleged trespass occurred when Nirow employees trimmed a tree that was eight feet beyond the utility easement with no limb within three feet of the power line. To support his claim against Riddle and Entergy, Russell alleged that Riddle, acting under the direction of Entergy, was the on-site supervisor who instructed the employees to remain at Russell's property in response to

---

[2] The state law claims Russell asserted against Nirow are not before us. Russell has not challenged the district court's decision to dismiss the negligence claim against Nirow, and the remanded trespass claim is pending in state court.

Russell's request that they move to another location. No facts were alleged, however, that either Riddle or Entergy intended Nirow's trimming to occur beyond the utility easement. The mere fact that Riddle chose the location of the trimming does not lead to an inference of intent to cause Nirow's employees to enter upon Russell's property without his consent. As a result, the district court properly dismissed the trespass claim against Riddle and Entergy.

The same is true for the negligence claim. Russell's negligence claim was based on the crew's use of an "incorrect method of trimming trees." He never alleged, however, that Riddle or Entergy had any control over the Nirow employees' preferred method of trimming. As a result, Russell failed to allege sufficient facts to establish that Riddle or Entergy should be held accountable for their subcontractor's actions, and the district court properly dismissed the negligence action.

We next address Russell's First and Fourth Amendment claims.[3] Altom asserted qualified immunity in response to these claims. To assess qualified immunity, "we decide (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (internal quotation marks omitted). Because Russell has failed to establish a constitutional violation for either claim, we do not reach the issue of whether the right at issue was clearly established.

Both Russell's First Amendment claim and his Fourth Amendment claim require an absence of probable cause to support the arrest. *See, e.g.*, *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the

---

[3] Russell does not challenge the dismissal of his substantive and procedural due process claims brought under the Fourteenth Amendment.

motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment."); *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ("An arrest is unlawful unless it is supported by probable cause."). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Ramirez*, 716 F.3d at 375 (emphasis omitted). The probable cause inquiry focuses on the validity of the arrest, not the validity of each individual charge made during the course of the arrest. *See Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

A grand jury indictment is sufficient to establish probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975). When the facts supporting an arrest "are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). The chain of causation remains intact, however, if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). In other words, "the chain of causation is broken only where all the facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary...." *Id.* at 1427–28.

Because the grand jury indicted Russell, he must show that Altom tainted the grand jury's deliberations in some way. There is no evidence, however, that Altom played any role in the indictment process. Instead, Russell alleges that District Attorney Weeks acted as Altom's agent and misled the grand jury in three ways: (1) by being involved in the arrest decision such that he was no longer an impartial intermediary, (2) by presenting three charges based on

violations of a provision in the Texas Utilities Code that contains no criminal penalties of any kind, and (3) by omitting vital facts concerning the elements of the other three charges. This claim fails at the outset as there is no evidence that Altom exercised any control or influence over Weeks. The simple fact that an officer makes an arrest does not transform the attorney prosecuting that arrest into the officer's agent. But even so, the flaws Russell identifies are insufficient to establish the taint necessary to vitiate a grand jury's findings.

First, prosecutors are often involved in charging decisions, and they themselves are not the "impartial intermediary" capable of insulating an officer from liability—that is the grand jury to whom the prosecutor, an inherently biased party, presents the information. Second, the improper inclusion of a statute with no criminal penalties does nothing to undercut the other half of the indictment, which was based on a clearly applicable statute that carries criminal penalties. The facts supporting the charge do not change depending on the statute presented. Finally, there is no support for the contention that Weeks omitted vital facts. The grand jury had access to the police reports, heard Sergeant Cleere's testimony of the events, and were given an opportunity to request the testimony of any other witness. Russell disputes the version of the facts presented as well as the prosecutor's failure to present potentially exculpatory evidence. But "[i]t is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side." *United States v. Williams*, 504 U.S. 36, 51 (1992) (citation omitted). As a result, the district court did not err in its finding that probable cause supported the arrest. Because the grand jury's indictment was sufficient to establish probable cause, there is no need to address Russell's final argument regarding the lack of probable cause to support the initial charge of interference

with public duties. *See Wells*, 45 F.3d at 95 ("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause . . . .").

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.